**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Luis CASANOVA, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 30, 1999.
Filed Feb. 10, 2000.
Reargument Denied April 13, 2000.

---

2. There are three exceptions to the timeliness requirement. In brief, in order to have an otherwise untimely petition considered, the petitioner must plead and prove either: (a) that his failure to raise the claim previously was the result of governmental interference, (b) or the facts on which the claim is predicated were unknown to the petitioner and could not have been ascertained via the exercise of due diligence, or (c) that the right asserted is of constitutional dimension, was not recognized until after the time period for filing a PCRA petition had passed, and has been held to apply retroactively. 42 Pa.C.S. § 9545(b)(1).

3. There is an exception to the rule that a leap year occurs every four years. To be precise, a leap year "occurs in years whose last two digits are evenly divided by four except for centenary years not divisible by 400." *Random House Dictionary of the English Language* 1095 (2nd edition–unabridged). For example, the years 2000 and 2400 will be leap years, but the years 2100, 2200, and 2300 will not.

4. We emphasize that the only issue which we decide in this appeal is whether the PCRA petition was timely filed.

Dennis J. Mignucci, Philadelphia, for appellant.

Catherine Marshall, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before JOHNSON, LALLY–GREEN, and OLSZEWSKI, JJ.

OLSZEWSKI, J.:

¶ 1 Luis Casanova appeals his convictions for possession of a controlled substance with the intent to deliver, possession of a controlled substance, and criminal conspiracy. We reverse.

¶ 2 On October 17, 1996, Philadelphia Police Officer John Maddrey set up surveillance of the 3300 block of Rand Street because the police had received several complaints of drug traffic in the area. During the surveillance, Officer Maddrey watched Reggie Meyers, one of appellant's co-defendants, engage in four separate drug transactions. In each case, the buyer would approach Meyers and give him money. Meyers would then go to a Dodge Aries automobile that was parked nearby, remove a plastic bag from beneath its bumper, remove an item from that bag, and give that item to the buyer. Officer Maddrey instructed backup officers to arrest the fourth buyer, Kathleen Kennedy, appellant's other co-defendant. The backup officers detained her out of Meyers' sight and confiscated one packet of crack cocaine.

¶ 3 In the meantime, appellant arrived in a Mazda automobile, which he parked near Meyers. Meyers entered the Mazda and gave some money to appellant. After Meyers exited the vehicle, another man approached him and handed him money. Meyers returned to the Dodge Aries, removed the bag from underneath the bumper, removed an object from the bag, replaced the bag underneath the bumper, and gave that object to the man. As he walked away, this man took a substance from the bag, put it in a pipe, and began

smoking it. Meyers walked back to appellant, who was now standing near the Mazda, and handed him the money from the third man. At this point, police officers arrested Meyers and appellant. The officers removed the baggie from underneath the Dodge Aries' bumper. The bag contained fifteen packets of cocaine. A bag underneath the Aries' gas tank cover contained alprazolam. Without obtaining a warrant, the police then searched the Mazda and found $290 in the glove compartment and a bag containing 124 packets of crack cocaine between the passenger seat and the center console.

¶ 4 Appellant was charged with two counts of possession of a controlled substance, two counts of possession with intent to deliver, and conspiracy. Appellant attended his arraignment, but failed to appear at his pre-trial conference in April or at his two-day jury trial in June. Following one day of testimony, appellant's counsel moved to suppress the evidence seized in the Mazda. In denying the motion, the trial judge remarked:

And, so, the issue now becomes ... if the police officer has the right to look in the car. And, he says, he would have seen the plastic bag if he would have looked in the car. But because he was acting pursuant to the instructions of Officer Maddrey, he was going to go to a specific place in the car; so, as a result thereof, he opened the door and when he bent down, before he got in the car, that's when he saw the bag. Well, if he saw the plastic bag now, there's no doubt about it ... that he has the right to take that bag into custody. So the whole case seems to hinge on what was the intention of the officer.

N.T., 6/10/97, at 8–9.[1] He then said:

[W]ill the Supreme Court take this position: Yes, there's no exigent circumstances here; therefore, they had no right to search the car. However, they had the right to take the car into custody. Okay. If they would have gotten in the car to take the car into custody, they would have seen the bag, they had the right to grab the bag. Okay?

*Id.* at 11. Testimony then resumed, and, on June 11, 1997, appellant was convicted of one count of possession, one count of possession with intent to deliver, and conspiracy. This appeal followed.

¶ 5 Appellant raises only one issue for us to consider: "Did the lower court err in denying appellant's motion to suppress?" Appellant's Brief at 6.

¶ 6 Our standard of review of a suppression court's denial of a motion to suppress is well-settled:

In an appeal from the denial of a motion to suppress our role is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. In making this determination, we may consider only the evidence of the prosecution's witnesses and so much of the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the factual findings of the suppression court are supported by the evidence, we may reverse only if there is an error in the legal conclusions drawn from those factual findings.

*Commonwealth v. Lohr*, 715 A.2d 459, 461 (Pa.Super.1998) (quoting *Commonwealth v. Carlson*, 705 A.2d 468, 469 (Pa.Super.1998)).

¶ 7 "The Fourth Amendment to the United States Constitution and Article 1, § 8 of the Pennsylvania Constitution require that searches be conducted pursuant to a warrant issued by a neutral and detached magistrate. A search conducted without a warrant is generally deemed un-

1. We rely on the notes of testimony from the suppression hearing because the trial court judge declined to specifically address this issue in his opinion. He said, "[t]his Court placed its reasons for denying the defendant's motion on the record. *See* N.T., 6/10/97, at 2–12. Thus this claim must fail." Trial Court Opinion, 3/4/99, at 2.

reasonable for constitutional purposes." *Commonwealth v. Stewart*, 740 A.2d 712, 715 (Pa.Super.1999) (citations omitted). There are, however, exceptions to this rule. While the "United States Supreme Court has recognized an 'automobile exception' to the warrant requirement," our own Supreme Court has not. *Id.* at 715. Instead, in Pennsylvania, automobile searches may only be conducted without a warrant "when there exists probable cause to search and exigent circumstances necessitating a search." *Id.* at 715 (citations omitted).[2] We turn first to whether the police had probable cause to search appellant's car.

¶ 8 It is well-settled that:

"[t]he level of probable cause necessary to justify a warrantless search of an automobile is the same as that required to obtain a search warrant." *Commonwealth v. Talley*, 430 Pa.Super. 351, 634 A.2d 640, 643 (1993) (citing *Commonwealth v. Pleummer*, 421 Pa.Super. 51, 617 A.2d 718 (1993[2])). "Probable cause exists where the facts and circumstances within the knowledge of the officer are reasonably trustworthy and sufficient to warrant a person of reasonable caution in believing that the person has committed the offense." *Commonwealth v. Zook*, 532 Pa. 79, 615 A.2d 1, 6 (1992).

*Commonwealth v. Gelineau*, 696 A.2d 188, 192 (Pa.Super.1997). Further, "we must focus on the circumstances as seen through the eyes of a trained police officer, and remember that in dealing with questions of probable cause, we are not dealing with certainties, but the practical and factual considerations of every day life on which reasonable and prudent men act." *Commonwealth v. Johnson*, 444 Pa.Super. 488, 664 A.2d 178, 179 (1995) (citing *Commonwealth v. Dennis*, 417 Pa.Super. 425, 612 A.2d 1014, 1016 (1992)). Here, police officers received complaints of drug activity in the area. During a stakeout, they observed Meyers exchange packets for money. Upon stopping one buyer, they discovered that the packets contained cocaine. They then watched Meyers give that money to appellant, even observing Meyers handing the money from a particular buyer directly to appellant. We have no trouble determining that probable cause existed in this case.

¶ 9 The exigency requirement, however, poses more of a problem. Certainly the mere mobility of the automobile does not suffice to meet the exigency requirement. *See Commonwealth v. Rosenfelt*, 443 Pa.Super. 616, 662 A.2d 1131, 1146 (1995) (holding that "[a]bsent exigent circumstance apart from the car's inherent mobility," the officer should have obtained a search warrant); *see also Gelineau*, 696 A.2d at 192 n. 2 ("a proper warrantless search requires both probable cause and exigent circumstances other than the inherent mobility of the vehicle"). The Commonwealth, however, relies on more than the mobility of the auto; it argues that exigent circumstances existed here because the officers were unaware prior to the stakeout that the Mazda was involved, and thus could not have obtained a search warrant. We are not convinced.

¶ 10 The Commonwealth points us to *Commonwealth v. Luv*, 557 Pa. 570, 735 A.2d 87 (1999), to support its position. *Luv*, however is readily distinguishable from the case before us. In *Luv*, officers obtained a search warrant for defendant's home. *See id.* at 89. Defendant then left his home and went to his girlfriend's home, where he parked his car. *See id.* Officers suspected that there were drugs in defendant's car and attempted to get a new search warrant for defendant's

---

**2.** We note that this was not a search incident to arrest. *See White*, 669 A.2d at 902 (noting that "a police officer may search the arrestee's person and the area in which the person is detained in order to prevent the arrestee from obtaining weapons or destroying evidence, but otherwise, absent an exigency" a warrant is required).

212

car. *See id.* Before they could do so, however, defendant drove away. *See id.* Believing that defendant was on his way to sell the drugs contained in the car, the officers stopped him before they could get a new warrant. *See id.* While "unforeseen circumstances involving the search of an automobile coupled with the presence of probable cause, *may* excuse the requirement for a search warrant," *Commonwealth v. White*, 543 Pa. 45, 669 A.2d 896, 901 (1995) (emphasis added), we must consider the facts in this case. "Exigent circumstances arise where the need for prompt police action is imperative, either because evidence is likely to be destroyed, ... or because there exists a threat of physical harm to police officers or other innocent individuals." *Stewart*, at 717 (quoting *Commonwealth v. Hinkson*, 315 Pa.Super. 23, 461 A.2d 616, 618 (1983)). This was certainly the case in *Luv* because defendant was driving away with the evidence. The instant case, however, is very different because appellant was not driving away with the evidence, but rather was in police custody. We have previously stated that where "[a]ppellant was already in custody and there was no danger that any contraband within the car could be removed by him," the police must obtain a warrant. *Commonwealth v. Haskins*, 450 Pa.Super. 540, 677 A.2d 328, 331 (1996); *see also Rosenfelt*, 662 A.2d at 1146 (holding that where defendant was in custody and the car was under the officers' control, the officer "would have been only minimally burdened in securing a warrant"). While the officers may not have known that appellant's car was involved prior to the stakeout, this alone does not meet the exigency requirement in this case because both appellant and Meyers were under arrest before the officers searched the Mazda. There was certainly no chance for appellant to destroy contraband in the vehicle; he was being restrained nearby. Further, there is no indication that appellant's vehicle posed any threat to the officers or to the public. They could easily have guarded the vehicle while an officer obtained a search warrant. We cannot find that the exigent circumstances requirement has been met in this case.

¶ 11 In admitting the evidence, the court below relied on the fact that the officers would have found the evidence when impounding the vehicle. When impounding a vehicle, "an inventory search is permissible when the vehicle is lawfully in the custody of police and when police are able to show that the search was in fact a search conducted for the purposes of protection of the owner's property." *White*, 669 A.2d at 903. "If the search was conducted as part of a criminal investigation, *it is not an inventory search.*" *Id.* (emphasis added). Here, the search was plainly conducted as part of a criminal investigation. It was not, therefore, an inventory search. Once the police suspected that there was contraband in the vehicle, they could no longer classify their search as one done for inventory purposes. Accordingly, they should have obtained a search warrant.

¶ 12 Because the evidence found in the Mazda should have been suppressed, we reverse appellant's conviction.

¶ 13 Judgment of sentence reversed. Jurisdiction relinquished.

¶ 14 LALLY GREEN, J., Concurs in the Result.