**COMMONWEALTH of Pennsylvania,
Appellant**

v.

**Douglas A. REINERT, Appellee.**

Superior Court of Pennsylvania.

Argued May 24, 2005.

Filed Nov. 18, 2005.

Reargument Denied Jan. 27, 2006.

Alisa R. Hobart, Asst. Dist. Atty., Reading, for the Com., appellant.

Kurt Geishauser, Reading, for appellee.

Before: STEVENS, GANTMAN, and KELLY, JJ.

PER CURIAM:

¶ 1 Order affirmed.

¶ 2 Judge STEVENS filed a dissenting opinion.

STEVENS, J., Dissenting:

¶ 1 I conclude the Commonwealth met its burden of establishing the search of Appellee's vehicle was conducted for inventory purposes, and I would reverse the suppression court's order granting Appellee's motion to suppress. Therefore, I respectfully dissent.

¶ 2 Appellee was charged with driving under the influence of alcohol;[1] driving under the influence of a controlled substance;[2] driving under the influence of alcohol and a controlled substance;[3] possession of a controlled substance/marijuana 30 grams or less;[4] possession with intent to deliver a controlled substance;[5] possession of drug paraphernalia;[6] and related summary offenses. Appellee filed a pre-trial motion seeking to suppress the evidence seized by the police. On September 23, 2004, a suppression hearing was held, during which the following was established: On January 13, 2004, Officers Glenn Oesterling and Victor Frederick of the Amity Township Police Department conducted a traffic stop of Appellee's vehicle, and Appellee stopped his vehicle on private property. Officer Oesterling approached Appellee and asked for his license and registration. After Appellee provided the information, Officer Oesterling smelled alcohol on Appellee's breath and an odor of marijuana emanating from the inside of the vehicle. Upon questioning, Appellee told Officer Oesterling that he had a "couple of drinks." Officer Oesterling asked whether Appellee was "smoking pot in the vehicle," and Appellee indicated that he had recently finished "smoking a joint." The officers did not immediately see any contraband in plain view. Officer Oesterling administered three field sobriety tests and, when Appellee failed two of them, the officer arrested Appellee for driving under the influence of alcohol, handcuffed him, and placed him in the back of the patrol car.

¶ 3 Officer Oesterling specifically testified at the suppression hearing that the vehicle would be impounded after Appellee's arrest because Appellee's vehicle was

1. 75 Pa.C.S.A. §§ 3731(a)(1) and (a)(4)(i).

2. 75 Pa.C.S.A. § 3731(a)(2).

3. 75 Pa.C.S.A. § 3731(a)(3).

4. 35 P.S. § 780–113(a)(31).

5. 35 P.S. § 780–113(a)(30).

6. 35 P.S. § 780–113(a)(32).

parked in a private lot. Following the police department's guidelines for impounded vehicles, Officers Oesterling and Frederick, as the impounding officers, conducted an inventory search of the vehicle to protect them from liability. The officers searched Appellee's vehicle and found two marijuana joints in an ashtray, a marijuana bowl with residue, a cigarette roller, a brass marijuana bowl in a lower center compartment, and a closed, unlocked safe under the back seat. Upon opening the safe, Officer Frederick found a "brick" of marijuana and marijuana paraphernalia. The suppression court granted Appellee's motion to suppress the evidence discovered in the vehicle, and the Commonwealth appealed alleging that the court's ruling substantially handicapped the prosecution.[7]

¶ 4 The first inquiry in determining whether an inventory search was valid is whether the police lawfully impounded the vehicle, i.e., had lawful custody of the automobile. *See Commonwealth v. Hennigan*, 753 A.2d 245 (Pa.Super.2000). The Commonwealth contends that the police lawfully impounded Appellee's vehicle because the vehicle was left on private property, and there were no other occupants in the vehicle to drive it out of the area. Conversely, Appellee argues that the vehicle was not legally impounded because his vehicle was not located on a highway or roadway and was not blocking any flow of traffic.[8]

¶ 5 75 Pa.C.S.A. § 3353(b) UNATTENDED VEHICLE ON PRIVATE PROPERTY, provides that:

(1) No person shall park or leave unattended a vehicle on private property

without the consent of the owner or other person in control or possession of the property except in the case of emergency or disablement of the vehicle, in which case the operator shall arrange for the removal of the vehicle as soon as possible.

¶ 6 Here, I conclude the suppression court properly found that Police Officer Glenn Oesterling lawfully impounded Appellee's vehicle because the vehicle was parked on private property and there were no other occupants in the vehicle to drive it out of the area. *See* 75 Pa.C.S. § 3353(b)(1). Only in cases of emergency or disablement of the vehicle, would the operator have a right to leave a car on private property without the owner's consent. *Id.* Here, Appellee's arrest was not a case of emergency, nor was the vehicle disabled.[9]

¶ 7 The second inquiry in determining whether a proper inventory search has occurred is whether the police have acted in accordance with a reasonable, standard policy of routinely securing and inventorying the contents of the impounded vehicle. *Hennigan*, 753 A.2d at 255. The Commonwealth argues that the search was performed in order to safeguard Appellee's property and protect the interests of the officers and police department after Appellee's arrest, in accordance with the policies and procedures of the Amity Township Police Department. The suppression court concluded that the police conducted the search for the purpose of investigation. Specifically, the court concluded the search was investigatory in nature because Appellee had admitted to recently smoking mari-

7. I note that all Pa.R.A.P.1925(b) requirements have been met.

8. The suppression court ruled that Appellee's automobile was lawfully impounded. ·

9. I note that, under the Amity Township Police Department's written policy on inventory searches of towed or impounded vehicles, officers are authorized to have vehicles towed where the motor vehicle is illegally parked. *See* Exhibit No. 3, pg. 24.

juana in the vehicle, and the police observed two marijuana cigarettes in the van's ashtray when they began the search. Additionally, the court found that there were no valuable items inside the van in plain view of the officers leading them to believe that an *immediate inventory search* of the van was necessary to protect Appellee's possessions and that it was beyond the scope of the search for the officers to open the closed safe to discover the contraband inside.

¶ 8 The fourth amendment to the United States Constitution provides that people are to be secure against "unreasonable" searches and seizures. *Commonwealth v. Brandt*, 244 Pa.Super. 154, 366 A.2d 1238, 1240 (1976.) An inventory search is reasonable if it is conducted pursuant to reasonable standard police procedures, in good faith, and not for the sole purpose of investigation. *Hennigan*, 753 A.2d at 255. The inventory search must not be a substitute for a warrantless investigatory search. *Id.* "The courts appear to focus on whether the inventory search is, in fact, an investigatory search or is beyond what is necessary to inventory the contents of the vehicle." *Id.* at 256–57. "The reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative 'less intrusive' means." *Illinois v. Lafayette*, 462 U.S. 640, 647, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983). *See Colorado v. Bertine*, 479 U.S.

367, 374, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987) ("reasonable police regulations relating to inventory procedures of automobiles administered in good faith satisfy the Fourth Amendment, even though courts might as a matter of hindsight be able to devise equally reasonable rules requiring a different procedure"). "[W]hether a search and seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case." *South Dakota v. Opperman*, 428 U.S. 364, 375, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) (*quoting Cooper v. California*, 386 U.S. 58, 59, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967)).

¶ 9 Here, the suppression court concluded that, because the officer was directly informed of prior marijuana use by Appellee, the search was investigative.[10] However, such a policy would allow anyone to frustrate an inventory search by making some declaration of possible guilt.

¶ 10 Indeed, the suppression court concluded that *any* appearance of an investigatory purpose nullifies an inventory search. However, as stated in *Hennigan*, 753 A.2d at 255, an inventory search is unreasonable if it is conducted for the *sole* purpose of investigation. In this case the police lawfully conducted a routine department inventory search subsequent to the impoundment of Appellee's vehicle and that the evidence does not support the conclusion that the search was done for

10. I note that the suppression court relied upon *Commonwealth v. Casanova*, 748 A.2d 207, 212 (Pa.Super.2000), which found, *inter alia*, that the police cannot classify a search as one done for inventory purposes once the police suspected that there was contraband in the vehicle. However, *Casanova* did not involve an inventory search. In *Casanova*, the appellate court suppressed the evidence found inside the vehicle because the police did not obtain a warrant after the police conducted a drug surveillance operation and witnessed monetary transactions take place inside the

vehicle. *Id.* at 207. There, the Commonwealth argued that exigent circumstances existed to surpass the warrant requirement. The car was not impounded, and therefore, no claim of an inventory search could be made. The passing reference in *Casanova* to an inventory search cites to no relevant authority and is simply dicta. Here, the Commonwealth argues that a proper inventory search was conducted pursuant to the police impound procedure because Appellee's car was parked on private property following his D.U.I. arrest.

investigatory purposes. For example, under the Amity Township Police Department's inventory procedure, any vehicle towed or impounded from public or private property at the discretion of the officers is to be inventory searched for valuables, conducted immediately before the vehicle is towed.[11] Officer Oesterling testified that the search of Appellee's vehicle was conducted in accordance with this policy. Therefore, I conclude Appellee's vehicle was not searched solely for investigation.

¶ 11 Additionally, I note that the suppression court concluded that, once the police discovered the marijuana cigarettes in the ash tray, the police should have stopped the search and waited for a warrant. However, the department's policy says nothing of the need to stop the inventory search upon discovering contraband, and I have found no case law to support such an argument. Amity Township's written inventory policy specifically states that items of contraband and/or potential evidentiary value are to be removed from the vehicle and secured if found while conducting the inventory custodial search.[12] In *Commonwealth v. Scott*, 469 Pa. 258, 365 A.2d 140 (1976), our Supreme Court upheld an inventory search of an impounded automobile which recovered, *inter alia*, a shotgun from under the front seat and shotgun shells from the glove compartment. *Id.* at 267, 365 A.2d at 144. There, the police did not have to stop the inventory search after the first contraband discovery.

¶ 12 Thus, I conclude the police in this case should not have been expected to cease their inventory search upon discovery of marijuana joints in an ashtray, and

the suppression court erred in concluding otherwise. If anything, upon discovery of contraband, for their own safety, police should continue to search to make certain no weapons are present.

¶ 13 Moreover, I conclude the suppression court erroneously decided to suppress the evidence on the basis that "[t]here were no items of value in plain view of the officers leading them to believe that an immediate inventory search of the van was necessary to protect and preserve the defendant's possessions." Suppression Court Opinion filed 11/22/04 at 4. Inventory searches are not conducted merely for the protection of the defendant, but also to protect the police against theft claims by defendants. *Commonwealth v. Smith*, 808 A.2d 215, 224 (Pa.Super.2002).[13] Therefore, the only relevant inquiry is whether the search was investigatory or for inventory purposes, not whether items were in plain view. Moreover, it is not necessary that the evidence is in plain view, so long as the search is reasonable and does not go beyond the formalities of an inventory search. *Commonwealth v. Woody*, 451 Pa.Super. 324, 679 A.2d 817, 819 (1996).

¶ 14 This sweeping policy decision, pronounced by the suppression court and adopted by the Majority, usurps the power of the legislature. There is no legal authority to support the proposition that items of value must be viewed prior to an inventory search. Rather, the reason the police conduct an inventory search is to find and inventory items of value to protect the rights of the defendant and law enforcement. Here, the inventory search was conducted to protect the police from

---

11. Exhibit No. 3, pg. 25–26.

12. Exhibit No. 3, pg. 35.

13. Under Amity Township Police Department's written inventory procedure, one of

the purposes of the inventory search is to protect police officers and the department from claims or disputes concerning allegedly lost or stolen property. *See* Exhibit No. 3, pg. 24.

theft claims by Appellee and to protect Appellee's property while his vehicle was in police custody. Thus, I conclude the search served two of the purposes designed to safeguard seized items in order to benefit both the police and Appellee.

¶ 15 Furthermore, I find the suppression court erred in concluding the officers went beyond the scope of the inventory search when the officers discovered the contraband inside the closed, but unlocked safe in Appellee's van. The police guidelines state that "[a]rticles of personal luggage which are closed but UNLOCKED must be inventory searched for valuables." [14] Furthermore, the United States Supreme Court has stated that policies of opening all containers or of opening no containers are "unquestionably permissible." *Florida v. Wells*, 495 U.S. 1, 4, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990). Here, I conclude the Amity Township Police Department's specific policy of inventorying items found in unlocked luggage was proper, and Officer Oesterling conducted the search pursuant to the policy.

14. *See* Exhibit No. 3, pg. 25.

¶ 16 Finally, the police had a responsibility to not unnecessarily search the vehicle, such as removing seats or ripping open the interior of the car. *See Brandt*, 366 A.2d at 1242. The officers in this case did not go beyond what was necessary to inventory the contents within the vehicle and their actions complied with the inventory search guidelines established in *Hennigan, supra*.

¶ 17 I conclude sound public policy, in addition to legal precedent, supports the actions of the police. An individual should not be able to frustrate an otherwise lawful inventory search by making some possible incriminating statement. In this case, I would find the police acted properly and with due regard to police procedures and to the rights of Appellee, and, therefore, I would reverse the suppression court's order.

