COMMONWEALTH of Pennsylvania,
Appellant

v.

Yusuf COPELAND, Appellee.

Superior Court of Pennsylvania.

Argued May 14, 2008.

Filed Aug. 7, 2008.

John F.X. Reilly, Asst. Dist. Atty., for Com., appellant.

William E. Ruane, Public Defender, for appellee.

BEFORE: BOWES, GANTMAN, and TAMILIA, JJ.

OPINION BY GANTMAN, J.:

¶ 1 Appellant, the Commonwealth of Pennsylvania, appeals from the order entered in the Delaware County Court of Common Pleas, which granted a motion to suppress the Commonwealth's evidence, filed on behalf of Appellee, Yusuf Copeland.[1] We reverse the court's suppression order and remand for further proceedings.

¶ 2 The suppression court opinion fully and correctly sets forth the relevant facts of this appeal as follows:

> Officer Donald Townes of the Darby Borough Police Department was on routine patrol in full uniform driving a marked police vehicle on December [7],

---

1. Pursuant to Pennsylvania Rule of Appellate Procedure 311(d), in a criminal case, "the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution." Pa.R.A.P. 311(d). Instantly, the Commonwealth properly certified that the suppression order substantially handicapped the prosecution of its case by precluding the admission of relevant and material evidence.

2006. At about 7:30 p.m. he saw a silver minivan go through a stop sign without stopping and watched as that vehicle swerved to the left and to the right as it proceeded past the sign. Officer Townes activated his overhead lights and siren and the vehicle immediately came to a stop. Officer Townes approached the vehicle and observed the driver, [Appellee], shifting around and reaching toward the right rear passenger seat. [Appellee] was the sole occupant of the vehicle. He rolled down the driver's side window after Officer Townes knocked on the glass. As [Appellee] rolled the window down Officer Townes immediately smelled the strong odor of burning marijuana as a cloud of smoke came from the vehicle. Officer Townes asked for [Appellee's] license, registration and proof of insurance and upon receiving the documents returned to his police vehicle. After entering [Appellee's] information in the CLEAN radio communication system a report that [Appellee] was wanted on a Philadelphia warrant and was armed and dangerous came back.

Officer Townes left his vehicle and approached the minivan when he heard back-up officers arrive at the scene. Among others, Officers Brian Evans and Tom Takacs arrived to assist Officer Townes. These three officers approached the minivan and Officer Townes told [Appellee] to step from the vehicle. [Appellee] complied and Officer Townes conducted a pat down, put [Appellee] in handcuffs and placed him in the back of his marked vehicle [where Appellee] stayed through the remainder of the encounter at the scene. With [Appellee] in custody and seated in the rear of the police vehicle, Officers Evans and Takacs searched the minivan. Officer Townes testified that [Appellee] "would automatically have been placed under arrest" due to the outstanding warrant and "because of the strong odor of marijuana that came from the vehicle, they did a search of the vehicle." Further, Officer Townes stated, "The decision is automatically made to search the vehicle if he is armed and dangerous."

Officer Evans went to the passenger side of the minivan and opened the passenger side door. He put his hands in the vehicle, under the front seat and in the glove compartment. Next, he opened the sliding door on that side of the vehicle after smelling marijuana. After opening the sliding door he saw a small portion of the grip of a firearm sticking out of the pouch on the back of the front passenger seat. At the same time, Officer Takacs was searching the front driver seat where he located a small amount of marijuana and a blunt on the floor of the driver's seat before going to the passenger side and removing the firearm from the pouch.

(Suppression Court Opinion, filed 1/7/08, at 3–5) (internal citations to the record omitted).

¶ 3 On May 10, 2007, the Commonwealth filed its information, charging Appellee with persons not to possess firearms,[2] firearms not to be carried without a license,[3] driving under the influence of alcohol or controlled substance,[4] and related offenses. On July 3, 2007, Appellee filed a suppression motion, alleging the police had conducted an illegal, warrantless search of the vehicle. Appellee concluded the search violated his constitutional rights, and he asked the court to suppress all contraband

**2.** 18 Pa.C.S.A. § 6105.

**3.** 18 Pa.C.S.A. § 6106.

**4.** 75 Pa.C.S.A. § 3802(d)(1)(i).

obtained as a result of the search. The court conducted hearings on the matter on August 2, 2007 and October 12, 2007. By order entered October 24, 2007, the court granted Appellee's suppression motion.

¶ 4 The Commonwealth timely filed its notice of appeal on November 5, 2007. On November 9, 2007, the court ordered the Commonwealth to file a concise statement of matters complained of on appeal, pursuant to Pa.R.A.P.1925(b). The Commonwealth timely filed its Rule 1925(b) statement on November 29, 2007.

¶ 5 The Commonwealth now raises three issues for our review:

WHETHER THE TRIAL COURT'S GRANT OF SUPPRESSION CONSTITUTES LEGAL ERROR WHERE THE RECORD DEMONSTRATES THE POLICE SEIZED ITEMS WITHIN THE AUTOMOBILE BASED UPON PROBABLE CAUSE AND EXIGENT CIRCUMSTANCES?

WHETHER THE TRIAL COURT'S GRANT OF SUPPRESSION CONSTITUTES LEGAL ERROR WHERE THE WARRANTLESS SEARCH FOR WEAPONS WAS LAWFUL UNDER THE FOURTH AMENDMENT AUTOMOBILE EXCEPTION?

WHETHER THE TRIAL COURT'S GRANT OF SUPPRESSION CONSTITUTES LEGAL ERROR WHERE THE MARIJUANA RECOVERED FROM THE VEHICLE WAS SEIZED IN PLAIN VIEW?

(Commonwealth's Brief at 1).

¶ 6 The relevant scope and standard of review are as follows:

When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Keller,* 823 A.2d 1004, 1008 (Pa.Super.2003), appeal denied, 574 Pa. 765, 832 A.2d 435 (2003).

¶ 7 In its first issue, the Commonwealth contends Officer Townes approached the vehicle and observed Appellee making furtive movements towards the passenger's seat. The Commonwealth emphasizes the fact that a subsequent police radio broadcast identified Appellee as a wanted fugitive who should be considered "armed and dangerous." Although Officer Townes did not discover a weapon following a pat down search of Appellee, the Commonwealth claims this fact increased the likelihood that Appellee had hidden a weapon in his vehicle. Under these circumstances, the Commonwealth insists probable cause existed and exigent circumstances necessitated a warrantless search of Appellee's vehicle. The Commonwealth also argues: "The potential danger to police or public from a firearm in a car parked in the middle of the street made it imperative to find the firearm and impractical to obtain a warrant." (Commonwealth's Brief at 13). The Commonwealth concludes the court should have denied Appellee's suppression motion. We agree.

¶ 8 "The Fourth Amendment to the United States Constitution and Article 1, § 8 of the Pennsylvania Constitution require that searches be conducted pursuant to a warrant issued by a neutral and detached magistrate. A search conducted without a warrant is generally deemed to be unreasonable for constitutional pur-

poses." *Commonwealth v. Stewart*, 740 A.2d 712, 715 (Pa.Super.1999), *aff'd*, 568 Pa. 499, 798 A.2d 697 (2002) (internal citation omitted). "While the 'United States Supreme Court has recognized an automobile exception to the warrant requirement,' our own Supreme Court has not." *Commonwealth v. Casanova*, 748 A.2d 207, 211 (Pa.Super.2000), *appeal denied*, 570 Pa. 682, 808 A.2d 569 (2002).

¶ 9 "Nevertheless, we have adopted a limited automobile exception under Article I, § 8." *Commonwealth v. McCree*, 592 Pa. 238, 252, 924 A.2d 621, 630 (2007). Specifically, a warrantless search of an automobile may be conducted "when there exists probable cause to search and exigent circumstances necessitating a search." *Casanova, supra* at 211 (quoting *Stewart, supra* at 715). "Probable cause exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent individual in believing that an offense was committed and that the defendant has committed it." *Id.* at 718 (quoting *Commonwealth v. Dennis*, 417 Pa.Super. 425, 612 A.2d 1014, 1015–16 (1992), *appeal denied*, 535 Pa. 654, 634 A.2d 218 (1993)). In determining whether probable cause exists, we must consider the totality of the circumstances as they appeared to the arresting officer. *Stewart, supra.* Additionally, "[t]he evidence required to establish probable cause for a warrantless search must be more than a mere suspicion or a good faith belief on the part of the police officer." *Commonwealth v. Lechner*, 454 Pa.Super. 456, 685 A.2d 1014, 1016 (1996).

¶ 10 "Exigent circumstances arise where the .need for prompt police action is imperative, either because evidence is likely to be destroyed ... or because there exists a threat of physical harm to police officers or other innocent individuals." *Stewart, supra* at 717 (quot-ing *Commonwealth v. Hinkson*, 315 Pa.Super. 23, 461 A.2d 616, 618 (1983)). When evaluating whether there are exigent circumstances which justify a warrantless search, "a court must balance the individual's right to be free from unreasonable intrusions against the interest of society in quickly and adequately investigating crime and preventing the destruction of evidence." *Stewart, supra* at 717. An officer may search an automobile for a weapon if he has a reasonable belief the suspect is dangerous and the suspect might gain control of a weapon. *Commonwealth v. Rosa*, 734 A.2d 412 (Pa.Super.1999), *appeal denied*, 561 Pa. 693, 751 A.2d 189 (2000). Further:

> We have allowed warrantless seizures where police do not have advance knowledge that a **particular** vehicle carrying evidence of crime would be parked in a **particular** locale, ... the exigencies of the mobility of the vehicle and of there having been inadequate time and opportunity to obtain a warrant rendered the search [without a warrant] proper. Conversely, when the police have ample advance information that a search of an automobile is likely to occur in conjunction with apprehension of a suspect, a warrant has been held to be required before the automobile may be searched.

*McCree, supra* at 252–53, 924 A.2d at 630 (internal citations and quotation marks omitted) (emphasis in original).

¶ 11 In *Commonwealth v. Stainbrook*, 324 Pa.Super. 410, 471 A.2d 1223 (1984), the defendant and his companion sat in a parked truck in an empty lot late at night. A police officer approached the truck, detected the odor of burnt marijuana, and observed the defendant make a furtive movement inside the truck. The officer requested identification, and the two men complied with the officer's demand. At that point, the officer noticed the defen-

dant's jacket appeared to be concealing something on the floor of the truck. The officer told the defendant to lift up the jacket, the defendant obeyed, and the officer saw a plastic bag containing marijuana. The officer arrested the defendant, and a subsequent search of the jacket yielded six small plastic bags, a pipe, and a scale.

¶ 12 The Commonwealth charged the defendant with unlawful possession of a controlled substance and possession of a controlled substance with intent to deliver. The defendant filed a motion to suppress the marijuana and drug paraphernalia on the grounds that the police seized the evidence pursuant to an illegal search and arrest. Following a hearing, the court granted the defendant's motion. The Commonwealth appealed, asserting the officer's warrantless search was justified, the defendant consented to the search, and the search was valid as incident to a lawful arrest. On appeal, this Court determined the officer's search was legal:

> The deciding factor in determining whether a warrantless search of a motor vehicle is constitutionally permissible is the existence of ... probable cause. Moreover, in considering the reasonableness of a given search or seizure of a vehicle, the need for a warrant is often excused by exigent circumstances. Such a search is justified because 1) a vehicle is highly mobile and the likelihood is therefore great that it and its contents may never be found if police are prohibited from immobilizing it until a warrant is secured; and 2) one's expectation of privacy with respect to a motor vehicle is significantly less than that relating to one's home or office. Furthermore, where an officer who has not intruded into a constitutionally protected area sees contraband in plain view, such evidence may be seized without a warrant.

We agree with the Commonwealth that [the officer] was justified in conducting a search of the [defendant's] truck. In addition to observing the furtive behavior of the [defendant] ... [the officer] detected the odor of burning marijuana. At the suppression hearing, he testified that it was part of his training at the police academy to be able to identify marijuana by its sight and smell. The Supreme Court of the United States has held that an odor may be sufficient to establish probable cause for the issuance of a search warrant. In *Commonwealth v. Stoner*, [236 Pa.Super. 161, 344 A.2d 633 (Pa.Super.1975),] this [C]ourt stated that the rationale used to establish probable cause in those Supreme Court cases applies equally well when determining the validity of a search of a movable vehicle. In *Stoner*, we analogized a "plain smell" concept with that of plain view and held that where an officer is justified in being where he is, his detection of the odor of marijuana is sufficient to establish probable cause.

\* \* \*

We find, as we did in *Stoner, supra*, that it would have been a dereliction of duty for [the officer] "to ignore the obvious aroma of an illegal drug which he was trained to identify." We hold, therefore, that there was probable cause to search the [defendant's] truck and to seize the marijuana found therein.

We also agree with the Commonwealth's next argument regarding the search of the [defendant's] jacket. The law is clear that a warrantless search is proper if incident to a lawful arrest. A warrantless arrest is lawful if the facts and circumstances within the arresting officer's knowledge are such as would warrant a person of reasonable caution to believe an offense has been or is being

committed and the person to be arrested is probably the perpetrator. Under the circumstances of this case which include the surreptitious behavior of the [defendant], the odor of burning marijuana and the discovery of the marijuana underneath the [defendant's] jacket, we believe that there was probable cause to arrest the [defendant]. The subsequent search of the [defendant's] jacket and the seizure of the evidence contained therein, were, therefore, valid as incident to this lawful arrest.

*Stainbrook, supra* at 1224–25 (internal citations omitted).

¶ 13 Instantly, Officer Townes observed Appellee's vehicle travel through a stop sign. Officer Townes activated the overhead lights and siren on his patrol car and followed Appellee. In response, Appellee stopped his vehicle in the middle of the road. As Officer Townes exited his patrol car and approached Appellee's vehicle, he saw Appellee make furtive movements. Specifically, Appellee's right hand reached toward the back of the front passenger seat. Thereafter, Appellee moved his hand back to the steering wheel. When Appellee rolled down the window, a cloud of smoke emanated from the interior of the vehicle, and Officer Townes immediately recognized the odor of burnt marijuana.

¶ 14 Officer Townes asked Appellee if he knew he had run a stop sign. Appellee, however, did not respond to the officer's question. Officer Townes requested Appellee's driver's license, registration, and proof of insurance. Appellee provided these items, but he also made certain "fidgeting" motions, "shifting around, reaching around [and] doing all kinds of movements." (N.T. Suppression, 8/2/07, at 18).

¶ 15 Officer Townes returned to his vehicle to run Appellee's information through the radio communication system in his patrol car. In a matter of seconds, Officer Townes learned that Appellee was wanted on a warrant in Philadelphia and should be considered "armed and dangerous." (*Id.* at 23). Backup officers also heard this radio communication and responded to the scene. With his backup in place, Officer Townes ordered Appellee to step out of his vehicle. Appellee complied with this request, and Officer Townes conducted a pat down search. Although Officer Townes did not discover contraband on Appellee's person, he handcuffed Appellee and secured Appellee in the back of his patrol car.

¶ 16 With Appellee in custody, Officers Evans and Takacs approached Appellee's minivan. Officer Evans independently verified the smell of burnt marijuana emanating from inside the minivan. (*Id.* at 87). Officer Evans also opened the sliding rear door on the passenger's side of the vehicle. The officer "immediately in plain view ... could see a small portion of a firearm sticking up from ... the magazine pouch" on "the rear of the front passenger seat...." (*Id.* at 89) Officer Evans notified Officer Takacs, who removed the loaded, semiautomatic, .9 millimeter firearm. Additionally, Officer Takacs located a small amount of marijuana near the front driver's seat.

¶ 17 Under the totality of these circumstances, the officers had more than a "mere suspicion or a good faith belief" that Appellee was engaged in illegal activity. *See Casanova, supra; Lechner, supra.* Factors including Officer Townes' observation of a furtive movement, the detection of the odor of marijuana, and Appellee's status as an "armed and dangerous" fugitive

gave rise to probable cause to search Appellee's vehicle.[5] *See Stainbrook, supra.* Further, Officer Townes noticed Appellee's furtive movements when he first approached the vehicle. A subsequent police radio broadcast announced that Appellee is considered "armed and dangerous." After backup arrived, Officer Townes ordered Appellee out of his vehicle and conducted a pat down search. Because the pat down search did not yield a weapon, Officer Townes believed Appellee had concealed a weapon in the vehicle. These facts justified the officers' search for a weapon. *See Rosa, supra.* The discovery of other contraband was incident to the search for the weapon.

¶ 18 Moreover, the police did not have any advance knowledge that Appellee's vehicle would be carrying contraband at the time of the stop. *See McCree, supra.* Officer Townes' interaction with Appellee began abruptly when the officer effectuated a routine traffic stop. Within minutes, Officer Townes had developed probable cause to believe that marijuana and a weapon were inside the vehicle. As such, Officer Townes did not have an adequate opportunity to obtain a search warrant. *See id.* To protect the public and preserve evidence, Officer Townes and his colleagues moved quickly to seize the contraband from the vehicle, which Appellee had stopped in the middle of the road. We conclude this "prompt police action" was imperative. *See Stewart, supra.*

¶ 19 Based upon the foregoing, we hold the officers legally seized the contraband. *See Keller, supra.* Accordingly, we reverse the trial court's suppression order and remand for further proceedings.[6]

---

**5.** The suppression court concedes the existence of probable cause. (Suppression Court Opinion at 23).

¶ 20 Order reversed; case remanded for further proceedings. Jurisdiction is relinquished.

---

**6.** Due to our disposition, we need not address the Commonwealth's second and third issues.