J. S07044/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | No. 1325 EDA 2017 |
| | : | |
| DATWAN Q. BROOKINS | : | |

Appeal from the Order, March 22, 2017,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CR-51-CR-0006119-2016

BEFORE:  BENDER, P.J.E., PANELLA, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED JUNE 01, 2018**

The Commonwealth appeals from the March 22, 2017 order entered in the Court of Common Pleas of Philadelphia County that granted, in part, the motion to suppress evidence filed by appellee, Datwan Q. Brookins.  After careful review, we affirm.

The trial court set forth the following:

> [Appellee] was arrested on June 9, 2016 and charged on July 5, 2016 with Possession with Intent to Deliver, Possession of a Controlled Substance, and Possession of a Small Amount of Marijuana[1]. Following a preliminary hearing, the charges were held, and the trial court scheduled a hearing on [appellee's] Motion to Suppress.
>
> The Commonwealth called Police Officer David O'Connor to testify.  He was the only witness in this proceeding.  Officer O'Connor is an 11[-]year

---

[1] 35 P.S. § 780-113(a)(30), (a)(16), and (a)(31), respectively.

veteran, assigned to the 14th District, who has made numerous narcotics arrests during his tenure.

Officer David O'Connor and his partner were riding in a marked police car on June 8, 2016 about 10 p.m. in the neighborhood of 5700 Anderson Street in Philadelphia, Pennsylvania. According to Officer O'Connor, this area is partially residential, but known for drug activity and drug trafficking. Officer O'Connor could not recall making any other drug arrests on this block for at least a month prior to his arrest of [appellee]. Officer O'Connor does not have specialized training in narcotics. He does receive instruction as to narcotics during annual trainings.

On this night, the officers noticed a tan Buick fail to signal while making a left turn on the 58th block of Anderson Street. The vehicle did not have a working rear passenger brake light. The officers stopped the Buick, which [appellee] was operating.

Officer O'Connor testified that he first could smell the odor of fresh marijuana when [appellee] began to speak with him—Officer O'Connor did not describe the odor as strong or overpowering. [Appellee] complied with the officers' requests for identification and requests for information.

After running [appellee's] ID and vehicle information through the database, the officers confirmed that the vehicle was owned by [appellee's] mother. [Appellee] advised the officers that he had permission from his mother to use the vehicle.

The officers asked [appellee] to exit the vehicle and placed him at the rear of the police car, pending the outcome of the investigation. Officer O'Connor testified that [appellee] gave the officers no reason to believe that he had a weapon inside the car. When he asked [appellee] to step out of the car, Officer O'Connor did not ask [appellee] about the odor of marijuana that he said he could smell, but only about weapons even though the officers had no

fear there was a weapon in the car. [Appellee] told them there were no weapons in the car, just "weed" in the console.

Officer O'Connor said that "based on the odor, as well as [his] admission to the marijuana" he did not really need [appellee's] permission to search the vehicle under a 2014 Pennsylvania Supreme Court case, but he did so anyway. On cross[-]examination, Officer O'Connor testified that he did ask [appellee] if it "[was] okay if I search [his] vehicle" and that [appellee] said that the officers could search and that "there was a little bit of weed in the center console[."] As Officer O'Connor testified, [appellee] only made reference to the center console; he was never presented with the option to terminate the search beyond the center console.

Officer O'Connor's testimony on the issue of consent shifted over the course of cross-examination. Officer O'Connor amended his testimony to suggest that he not only asked [appellee] whether it was "okay" to conduct the search, but then also told [appellee] that he had a right to consent or not consent to the search. We find it unlikely that Officer O'Connor told [appellee] that he could refuse consent to the search while this officer had been operating under the assumption that a 2014 court decision allowed him to conduct the search "whether (the defendant) affirmed or denied it."

Officer O'Connor searched the center console and located one clear "dime" bag of marijuana, which turned out to be the only plausible source of the odor. Officer O'Connor testified that he then checked the vehicle for "the rest" of the marijuana, based on his observations, what he smelled, and his "years as a police officer[,"] although we are skeptical of these aspects of his testimony. As **no** marijuana was ever recovered from the areas where they removed the car seats or inside the front panel, the record does not support a finding that the officers could actually smell the odor of any

marijuana, that is, the very "object of the search[,"] in those parts of the car.

Officer O'Connor agreed that [appellee] never gave him consent to dismantle the back seat cushions to search under these seats. After forcibly removing the seat cushions, Officer O'Connor recovered three amber tinted pill bottles which contained 256 different pills mixed up in a single container. The prescription labels were torn or scratched off. It was Officer O'Connor's belief that the prescriptions were narcotics because they did not match the pills in the bottle. Officer O'Connor also said, however, that he could not confirm the contents of the pill bottles until he contacted poison control and had never received specialized training in the pill identification. He never asked [appellee] whether he had a prescription for the pills they recovered. The officers also pried apart the driver door panel, which "was stapled together" and "loose fitting[,"] and recovered a white sock with $3000 USC.[Footnote 1] After recovering the narcotics "without prescription labels" they found under the seats, they arrested [appellee] and handcuffed him. During the search incident to arrest, the police officers recovered $165 in USC from [appellee] and drug paraphernalia.

[Footnote 1] United States currency.

Trial court opinion, 7/18/17 at 2-5 (citations to notes of testimony omitted; emphasis and some brackets in original).

The record reflects that following the suppression hearing, the trial court denied appellee's motion to suppress as to the marijuana, but granted the motion as to the remainder of the physical evidence. The Commonwealth then filed a timely notice of appeal to this court. Within its notice of appeal, the Commonwealth certified that the suppression court's order would terminate or substantially handicap the appellee's prosecution.

***See*** Pa.R.A.P. 311(d) (permitting Commonwealth appeal from an interlocutory order if it certifies that the order will terminate or substantially handicap the prosecution). The Commonwealth simultaneously filed a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Thereafter, the trial court filed its Rule 1925(a) opinion.

The Commonwealth raises the following issue for our review:

> Did the lower court err by ruling that the police had no probable cause to search [appellee's] car after lawfully recovering narcotics from the center console?

Commonwealth's brief at 3.[2]

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.
>
> Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain ***de novo*** review over the suppression court's legal conclusions.

---

[2] We note that appellee's brief was due on December 21, 2017. Appellee neither requested an extension of time to file his brief nor did he file an appellee's brief.

*Commonwealth v. Korn*, 139 A.3d 249, 252-253 (Pa.Super. 2016) (internal citations and quotation marks omitted).

In *Commonwealth v. Gary*, 91 A.3d 102 (Pa. 2014) (opinion announcing judgment of the court),[3] the Pennsylvania Supreme Court adopted the federal automobile exception to the warrant requirement, which allows police officers to search a motor vehicle when there is probable cause to do so and does not require any exigency beyond the inherent mobility of the motor vehicle. *Gary*, 91 A.3d at 104. Therefore, ["t]he prerequisite for a warrantless search of a motor vehicle is probable cause to search." *Id.* at 138.

Our standard for determining whether probable cause exists is as follows:

> Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the [stop], and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime. The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require only a *probability*, and not a *prima facie* showing, of criminal activity. In determining whether probable cause exists, we apply a totality of the circumstances test.

---

[3] We note that although *Gary* is a plurality opinion, the result is precedential due to the nature of Justice Saylor's concurring opinion. *Gary*, 91 A.3d at 138 ("I join the lead Justices in adopting the federal automobile exception.").

*Commonwealth v. Martin*, 101 A.3d 706, 721 (Pa. 2014) (citation omitted; emphasis in original), *cert. denied*, 136 S. Ct. 201, 193 L. Ed. 2d 155 (U.S. 2015).

"It is well settled that an officer may stop a motor vehicle if the officer reasonably believes that a provision of the Motor Vehicle Code is being violated. Incident to this stop, the [officer] may check the vehicle's registration and the driver's license and issue a citation." *Commonwealth v. Henley*, 909 A.2d 352, 358 (Pa.Super. 2006) (citations and internal quotation marks omitted), *appeal denied*, 927 A.2d 623 (Pa. 2007).

Here, no dispute exists that Officer O'Connor lawfully stopped the vehicle being driven by appellee for Motor Vehicle Code violations. Following that lawful stop, Officer O'Connor approached the driver's side of the vehicle and began interacting with appellee, at which time he detected the odor of marijuana. (Notes of testimony, 3/2/17 23-25.) At this point, appellee denied having any weapons and informed Officer O'Connor that the center console of the vehicle contained marijuana. (*Id.* at 30.) Although a dispute exists as to whether appellee consented to the search, no dispute exists that at this juncture, based on "plain smell," Officer O'Connor developed the requisite probable cause to conduct a search for the marijuana that appellee told the officer was located in the center console. *See Commonwealth v. Smith*, 85 A.3d 530, 537 (Pa.Super. 2014) (citations omitted) (reiterating that this court has analogized a "plain smell" concept with that of plain view

and has held that where an officer is justified in being where he is, the officer's detection of the odor of marijuana is sufficient to establish probable cause); **see also Commonwealth v. Copeland**, 955 A.2d 396, 401 (Pa.Super. 2008) (law enforcement officer's detection of odor of marijuana sufficient to establish probable cause).

At this point, Officer O'Connor recovered "a plastic bag filled with weed" from the center console of the vehicle. (**Id.** at 30-31.) After recovering the marijuana, Officer O'Connor then decided to remove the rear seat of the vehicle, where he recovered three pill bottles, while another police officer pried open the driver's side door panel and recovered $3,000 in cash. (**Id.** at 16, 31, 39-40.) Appellee was then arrested. (**Id.** at 16.) A search incident to arrest recovered $165 in cash, as well as drug paraphernalia. (**Id.**)

With respect to that part of the search that followed the recovery of the marijuana, the trial court concluded that it was "implausible that the officers had sufficient probable cause to dismantle the rear seat cushions to look beneath them or pry the driver's door panel open." (Trial court opinion, 7/18/17 at 9.) The trial court further found that the Commonwealth "adduced no credible testimony or other evidence" to suggest that this latter part of the search was reasonable. (**Id.**) As such, the trial court found the latter part of the search unlawful because the police officers took "it upon themselves to expand the scope of the investigation without probable cause,

going beyond those parts of the car that "may conceal **the object** of the search." (*Id.* (emphasis in original).)

The United States Supreme Court has explained that:

> [t]he scope of a warrantless search of an automobile thus is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found. Just as probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase. Probable cause to believe that a container placed in the trunk of a taxi contains contraband or evidence does not justify a search of the entire cab.

*United States v. Ross*, 456 U.S. 798, 823 (1982).

Here, the object of the search was marijuana. Although Officer O'Connor recovered a bag of marijuana from the center console, after its recovery, he decided to remove the vehicle's rear seat and another officer removed the driver's door panel. Our review of the record demonstrates that Officer O'Connor offered no testimony to support the conclusion that he had reason to believe that additional marijuana was located within the vehicle so as to justify the removal of the vehicle's rear seat and the driver's door panel. Therefore, the record supports the trial court's factual findings that formed the basis of its legal conclusion that law enforcement lacked probable cause to further search the vehicle by removing the rear seat and the driver's door panel.

With respect to consent, the trial court did not find Officer O'Connor's testimony credible and concluded that even if appellee consented to the search of the vehicle's center console, that consent "did not include the forcible removal of the car's rear seat cushions and front door panel." (Trial court opinion, 7/21/17 at 13.) Our review of the record supports the trial court's factual finding that appellee did not consent to this part of the search.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/1/18