J. S82024/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| BRADLEY ERCIL JAE BURGESS, | : | |
| | : | |
| Appellant | : | No. 366 MDA 2016 |

Appeal from the Judgment of Sentence January 22, 2016
In the Court of Common Pleas of Luzerne County
Criminal Division at No(s): CP-40-CR-0003452-2014

BEFORE: OTT, DUBOW AND PLATT, JJ.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED JANUARY 25, 2017**

Appellant, Bradley Ercil Jae Burgess, appeals from the January 22,

2016 Judgment of Sentence entered in the Luzerne County Court of

Common Pleas.  After careful review, we affirm, in part on the basis of the

trial court's Opinion.

The trial court summarized the factual and procedural history as

follows:

> On November 19, 2014, the Luzerne County District Attorney
> filed a Criminal Information charging [Appellant] with possession
> of heroin with intent to deliver and DUI stemming from an
> August 20, 2014 traffic stop of a vehicle driven by [Appellant].
> [Appellant] pleaded not guilty and a jury trial was scheduled. On
> January 9, 2015, represented by the Public Defender's Office,
> [Appellant] filed a counseled pre-trial motion to suppress
> statements made by [Appellant] and physical evidence seized.

---

[*] Retired Senior Judge Assigned to the Superior Court.

A suppression hearing was held on July 28, 2015. The Commonwealth presented the testimony of Wilkes-Barre Police Officer David Balchun, and introduced [Appellant's] driving record and two lab reports into evidence. Officer Balchun testified that on August 20, 2014, he observed a vehicle make a right hand turn from North Empire Court Street onto Coal Street without using its turn signal. Additionally, Officer Balchun testified that he smelled a strong odor of marijuana smoke coming from the vehicle. Officer Balchun initiated a traffic stop of the vehicle, and when he approached the driver's side door the odor of marijuana got stronger. Officer Balchun observed [Appellant] in the driver's seat, and asked him for his license and registration information, which [Appellant] provided. Officer Balchun then asked [Appellant] if he had any marijuana in the vehicle because he could smell a strong order of marijuana coming from it. Officer Balchun testified that [Appellant] responded that he had a little marijuana in his vehicle and then handed the officer a cigar wrapper with a small baggie of marijuana inside it. After being handed the marijuana, Officer Balchun advised [Appellant] that he was going to search [Appellant's] vehicle for any other narcotics. Before the search could be conducted, however, [Appellant] fled in the vehicle. Officer Balchun pursued [Appellant] with his lights and siren activated, but [Appellant] refused to stop and instead ran several stop signs at a high rate of speed, travelled the wrong way down a one way street, and nearly hit a pedestrian. While pursuing [Appellant], Officer Balchun observed him throw several objects out the vehicle's window. [Appellant] was eventually apprehended and placed into custody after he pulled his vehicle into a driveway and jumped out while the vehicle was still rolling. When Officer Balchun returned to the area where he had observed [Appellant] throw the items out of the vehicle the officer found bundles of packaged heroin, totaling 250 packets. Based on [Appellant's] careless and reckless driving, and a statement he made after being taken into custody that he had smoked marijuana prior to being pulled over by Officer Balchun, [Appellant] was taken for blood work. He tested positive for marijuana. Officer Balchun also testified that as the result of his check on [Appellant's] driver's license, he learned that the license was suspended. At the conclusion of the suppression hearing, the Court denied [Appellant's] suppression motion.

An Amended Information was subsequently filed setting forth twenty-nine (29) counts against [Appellant] relating to the

events of August 20, 2014. Following a September 16, 2015 jury trial [Appellant] was found guilty of twenty-seven (27) of the twenty-nine (29) counts. A Pre-Sentence Investigation (PSI) was ordered to be completed by the Luzerne County Adult Probation and Parole Department, and sentencing was scheduled for November 23, 2015. [Appellant] failed to appear on that date, however, and sentencing was continued until January 22, 2016.

Following review and consideration of the recommendations of counsel and review of the PSI, [the trial court] sentenced [Appellant] to an aggregate term of incarceration of seven and one half (7½) to fifteen (15) years in a state correctional institution.

Trial Court Opinion, filed 6/30/16, at 1-3.

Appellant, still represented by the Public Defender's Office, filed a Motion for Modification of Sentence on January 28, 2016. Before the trial court ruled on the Motion, Appellant retained private counsel, who filed a Notice of Appeal with this Court on February 22, 2016. On March 1, 2016, the trial court denied Appellant's Post-Sentence Motion.[1]

---

[1] As a general rule, this Court has jurisdiction only over final orders. **Commonwealth v. Rojas**, 874 A.2d 638, 642 (Pa. Super. 2005). "A direct appeal in a criminal proceeding lies from the judgment of sentence." **Commonwealth v. Patterson**, 940 A.2d 493, 497 (Pa. Super. 2007) (quotation marks and citation omitted). If a defendant in a criminal case files a timely post-sentence motion, the judgment of sentence does not become final for the purposes of an appeal until the trial court disposes of the motions or the motions are denied by operation of law. **Commonwealth v. Borrero**, 692 A.2d 158, 160 (Pa. Super. 1997). The denial of a timely post-sentence motion becomes the triggering event for filing a notice of appeal. Pa.R.Crim.P. 720(A)(2). When an appellant files a notice of appeal before the court has ruled on his post-sentence motions, the judgment of sentence has not become "final," and any purported appeal will be interlocutory and unreviewable. **Borrero, supra**. In those circumstances, the proper remedy is to quash the appeal, relinquish
*Footnote continued on the following page.*

Appellant raises five issues on appeal.

1. Whether the trial court erred in ruling that there was probable cause to initiate a lawful traffic stop of the vehicle that was being driven by the Appellant?

2. Whether the trial court erred in ruling that the statements made by the Appellant during the traffic stop were admissible at trial, given that they were the result of a custodial interrogation in which the Appellant was not read his Miranda rights?

3. Whether the trial court erred in ruling that the items of purported marijuana and heroin that were seized from the Appellant and taken into evidence were admissible at trial, given that they were fruits of inadmissible statements given by the Appellant to Officer Balchun?

4. Whether the Appellant was provided with effective assistance of counsel throughout the duration of his case?

5. Whether the sentence imposed by the Honorable Judge David W. Lupas of the Luzerne County Court of Common Pleas on January 22, 2016, was too excessive, given that a lesser sentence would not depreciate the seriousness of the offenses and it would still adequately punish the Appellant.

Appellant's Brief at 3 (re-ordered for ease of disposition).

---

jurisdiction, and remand for the trial court to consider the post-sentence motions *nunc pro tunc*. *Id.* at 161. Nevertheless, if the court subsequently denies an appellant's post-sentence motions, "[this Court] will treat [an] appellant's premature notice of appeal as having been filed after entry of [an] order denying post-sentence motions." *See Commonwealth v. Ratushny*, 17 A.3d 1269, 1271 n. 4 (Pa. Super. 2011). Instantly, because the trial court subsequently denied Appellant's post-sentence motion on March 1, 2016, we will relate Appellant's premature notice of appeal forward to March 1, 2016, to resolve any jurisdictional impediments. *See id.*

## Motion to Suppress

Appellant's first three issues challenge the trial court's denial of his Motion to Suppress. Our well-settled standard of review in an appeal from an order denying a Motion to Suppress is as follows:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous.

***Commonwealth v. Jones***, 988 A.2d 649, 654 (Pa. 2010) (citation omitted).

With our standard of review in mind, we address each of Appellant's sub-arguments in turn.

### The Traffic Stop

At the hearing on Appellant's Motion to Supress, Officer Balchun testified that prior to effectuating the traffic stop, he personally observed Appellant turn without properly signaling, and smelled a strong odor of marijuana emanating from Appellant's vehicle. The trial court found Officer Balchun's testimony credible, and found that Officer Balchun had probable cause to stop Appellant. On appeal, Appellant avers that the trial court erred in finding that Officer Balchun had probable cause to stop Appellant's

vehicle because there was "no smoke or any visible signs of smoke billowing from the windows of [Appellant's] vehicle." Appellant's Brief at 8.

The Honorable David W. Lupas has authored a comprehensive, thorough, and well-reasoned Opinion, citing to the record and relevant case law in addressing Appellant's claim. After careful review of the parties' arguments, and the record, we affirm on the basis of the trial court's well written Opinion, which found that (i) Officer Balchun's credible testimony that he personally witnessed Appellant turn without properly signaling was a violation of 75 Pa.C.S. § 3334; and (ii) Appellant's violation of Section 3334 provided sufficient probable cause to justify the traffic stop. Trial Court Opinion, at 6-7.

*Appellant's Traffic Stop Statements*

Appellant next avers that his initial traffic stop and the single question posed therein constituted a custodial interrogation. He argues that, because he was not given his **Miranda**[2] warnings, the statements he made during his traffic stop should have been suppressed.

Judge Lupas has again authored a comprehensive, thorough, and well-reasoned Opinion, citing to the record and relevant case law in addressing Appellant's claim. After careful review of the parties' arguments, and the record, we affirm on the basis of the trial court's well written Opinion, which found that (i) under our jurisprudence, Appellant was subject to an

---

[2] **Miranda v. Arizona**, 384 U.S. 436 (1966).

investigatory detention, not under arrest, and "the dictates of **Miranda** do not attach during an investigatory detention[;]" and (ii) Officer Balchun's single question, whether Appellant had marijuana, was a permissible question designed to "confirm[] or dispel[] the officer's suspicions" that criminal activity was afoot. **See** Trial Court Opinion at 9 (*citing* **Commonwealth v. Chase**, 960 A.2d 108, [120] (Pa. 2008), and **Commonwealth v. Murray**, 936 A.2d 76, 81 (Pa. Super. 2007)).

<u>The Seizure of Marijuana and Heroin</u>

Appellant avers, in a single paragraph, that the trial court erred in denying his Motion to Suppress because the drugs that were seized "were fruits of the inadmissible statements made by [Appellant]." Appellant's Brief at 11.

As discussed **supra**, Appellant's statement that there was marijuana in the car was not inadmissible or obtained in violation of **Miranda**. Because Appellant's scant argument is premised on his averment that the statement should have been suppressed, we conclude that this argument is without merit.

**Effective Assistance of Counsel**

In his fourth issue, Appellant raises an ineffective assistance of counsel claim, averring that trial counsel failed to adequately cross-examine Officer Balchun at trial. Appellant's Brief at 12.

Litigation of ineffectiveness claims is not generally a proper component of a defendant's direct appeal, and is presumptively deferred for collateral attack under the PCRA. *See Commonwealth v. Holmes*, 79 A.3d 562, 576 (Pa. 2013) (establishing a deferral rule for ineffectiveness claims litigated after its decision in *Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002)). However, the Pennsylvania Supreme Court has recognized two exceptions to the rule that ineffectiveness claims should be deferred until collateral review, both falling within the discretion of the trial court:

> First, we held that trial courts retain discretion, in extraordinary circumstances, to entertain a discrete claim of trial counsel ineffectiveness if the claim is both apparent from the record and meritorious, such that immediate consideration best serves the interest of justice. Second, we held that trial courts also have discretion to entertain prolix claims of ineffectiveness if there is a good cause shown and the unitary review thus permitted is accompanied by a knowing and express waiver by the defendant of the right to pursue a first PCRA petition.

*Commonwealth v. Arrington*, 86 A.3d 831, 856-57 (Pa. 2014).

Here, the trial court chose not the exercise its discretion to entertain Appellant's ineffectiveness claim. We agree with the trial court's denial of relief because neither of the specified exceptions to the rule are present in this matter. It is not clear from the record whether Appellant's claim is meritorious or whether trial counsel may have had a reasonable trial strategy for cross-examining Officer Balchun as he did. Nor was good cause or "a knowing and express waiver" of Appellant's right to his first PCRA

Petition shown. *Id.* Accordingly, we decline to address Appellant's ineffective assistance of counsel claims in this direct appeal.

### Discretionary Aspects of Sentence

Finally, Appellant challenges the discretionary aspects of his sentence. A challenge to the discretionary aspects of sentencing is not automatically reviewable as a matter of right. *Commonwealth v. Hunter*, 768 A.2d 1136, 1144 (Pa. Super. 2001). Prior to reaching the merits of a discretionary sentencing issue:

> We conduct a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* [Pa.R.Crim.P. 720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006) (citations omitted).

In the instant case, Appellant filed a timely Post-Sentence Motion and Notice of Appeal. Although Appellant did not include in his brief a separate Rule 2119(f) Statement, the Commonwealth has not objected to this defect and, thus, we decline to find that the defect is fatal.[3] As to whether Appellant has presented a substantial question, we note:

---

[3] This Court may overlook an appellant's failure to comply with Rule 2119(f) where the Commonwealth fails to object to the omission and a substantial
*Footnote continued on the following page.*

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (citations and quotation omitted).

Here, Appellant complains that "the sentences imposed [were] on the higher end of [Appellant's] applicable sentencing guidelines[,]" and that "the trial court failed to properly take into consideration [Appellant's] history and characteristics when imposing [Appellant's] sentences for his offenses." Appellant's Brief at 14-15. In particular, Appellant avers that the trial court "failed to take into consideration" that Appellant's prior record score of five was due in large part to "a manslaughter charge brought against [Appellant] when he was sixteen years old[.]" *Id.* at 14.

An argument that the sentencing court failed to consider mitigating factors in favor of a lesser sentence does not present a substantial question appropriate for our review. *Commonwealth v. Hanson*, 856 A.2d 1254, 1257-58 (Pa. Super. 2004). *See also Commonwealth v. Griffin*, 804 A.2d 1, 9 (Pa. Super. 2002) (citing *Commonwealth v. Williams*, 562 A.2d 1385, 1388 (Pa. Super. 1989) (*en banc*) (an allegation that the sentencing

---

question is obvious from the appellant's brief. *Commonwealth v. Kneller*, 999 A.2d 608, 614 (Pa. Super. 2010).

court did not adequately consider various factors is, in effect, a request that this court substitute its judgment for that of the lower court in fashioning a defendant's sentence)).

Moreover, we note that Appellant does not allege that his 7½ to 15 year sentence is in the aggravated range of the sentencing guidelines or outside of the statutory maximum sentence. Nor does Appellant point to any specific provision of the Sentencing Code that the sentencing court ostensibly violated. Appellant's bald assertion that his sentence is excessive does not raise a substantial question. *See Commonwealth v. Trippett*, 932 A.2d 188, 201-03 (Pa. Super. 2007) (bald allegations of excessiveness insufficient to permit discretionary review).

Because we conclude that Appellant has failed to raise a substantial question as to the appropriateness of his sentence, we will not address the merits of Appellant's sentencing claim.

Judgment of Sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/25/2017

11TH JUDICIAL DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE COURT OF COMMON PLEAS OF LUZERNE COUNTY |
| v. | : | CRIMINAL DIVISION |
| BRADLEY ERCIL BURGESS Defendant / Appellant | : | NO.3452 OF 2014 |

## OPINION

BY:   THE HONORABLE DAVID W. LUPAS

I.   **FACTS AND PROCEDURAL HISTORY**:

On November 19, 2014, the Luzerne County District Attorney filed a Criminal Information charging the above named Defendant with possession of heroin with intent to deliver[1] and DUI[2] stemming from an August 20, 2014 traffic stop of a vehicle driven by the Defendant. The Defendant pleaded not guilty and a jury trial was scheduled. On January 9, 2015, represented by the Public Defender's Office, the Defendant filed a counseled pre-trial motion to suppress statements made by the Defendant and physical evidence seized.

A suppression hearing was held on July 28, 2015. The Commonwealth presented the testimony of Wilkes-Barre Police Officer David Balchun, and introduced the Defendant's driving record and two lab reports into evidence.[3] Officer Balchun testified that on August 20, 2014, he observed a vehicle make a right hand turn from

---

[1] 35 P.S. § 780-113(a)(30).
[2] 75 Pa.C.S.A. § 3802(d)(1).
[3] The Defendant presented no testimony or evidence.

1

North Empire Court Street onto Coal Street without using its turn signal. N.T. 7/28/15 at 5. Additionally, Officer Balchun testified that he smelled a strong odor of marijuana smoke coming from the vehicle. *Id.* at 6, 15. Officer Balchun initiated a traffic stop of the vehicle, and when he approached the driver's side door the odor of marijuana got stronger. *Id.* at 16. Officer Balchun observed the Defendant in the driver's seat, and asked him for his license and registration information, which the Defendant provided. *Id.* at 6, 16. Officer Balchun then asked the Defendant if he had any marijuana in the vehicle because he could smell a strong order of marijuana coming from it. *Id.* at 6-7, 17. Officer Balchun testified that Defendant responded that he had a little marijuana in his vehicle and then handed the officer a cigar wrapper with a small baggie of marijuana inside it. *Id.* at 7. After being handed the marijuana, Officer Balchun advised the Defendant that he was going to search the Defendant's vehicle for any other narcotics. *Id.* Before the search could be conducted, however, the Defendant fled in the vehicle. *Id.* at 8. Officer Balchun pursued the Defendant with his lights and siren activated, but the Defendant refused to stop and instead ran several stop signs at a high rate of speed, travelled the wrong way down a one way street, and nearly hit a pedestrian. *Id.* at 9, 19. While pursuing the Defendant, Officer Balchun observed him throw several objects out the vehicle's window. *Id.* at 9-10. The Defendant was eventually apprehended and placed into custody after he pulled his vehicle into a driveway and jumped out while the vehicle was still rolling. *Id.* at 10-11. When Officer Balchun returned to the area where he had observed the Defendant throw the items out of the vehicle the officer found bundles of packaged heroin, totaling 250 packets. *Id.* at 11-12. Based on the Defendant's careless and reckless driving, and a statement he made after

2

being taken into custody that he had smoked marijuana prior to being pulled over by Officer Balchun, the Defendant was taken for blood work. *Id.* at 12. He tested positive for marijuana. *Id.* Officer Balchun also testified that as the result of his check on the Defendant's driver's license, he learned that the license was suspended. Id. at 8. At the conclusion of the suppression hearing, the Court denied the Defendant's suppression motion. *Id.* at 33.

An Amended Information was subsequently filed setting forth twenty-nine (29) counts against the Defendant relating to the events of August 20, 2014. Following a September 16, 2015 jury trial the Defendant was found guilty of twenty-seven (27) of the twenty-nine (29) counts.[4] A Pre-Sentence Investigation (PSI) was ordered to be completed by the Luzerne County Adult Probation and Parole Department, and sentencing was scheduled for November 23, 2015. The Defendant failed to appear on that date, however, and sentencing was continued until January 22, 2016.

Following review and consideration of the recommendations of counsel and review of the PSI, this Court sentenced the Defendant to an aggregate term of incarceration of seven and one half (7 ½) to fifteen (15) years in a state correctional institution.[5] N.T. 1/22/16 at 8-11. The Defendant was advised by this Court of his post-sentence rights before the hearing concluded. *Id.* at 12-13.

---

[4] Although the Defendant was present during the trial, after the jury concluded its deliberations and the parties were reassembled for the reading of the verdict the Defendant did not return to the courtroom and could not be located. The verdict was thus read in his absence. N.T. 9/16/15 at 186.

[5] Each of the individual sentences imposed upon the Defendant fell within the standard sentencing guideline ranges. The specific charges and sentences were as follows:
**Count 1 - Possession with intent to deliver controlled substance (heroin), 35 P.S. § 780-113(a)(30):** thirty-three (33) to sixty-six (66) months incarceration in a state correctional institution;

3

Still represented by the Public Defender's Office, the Defendant filed a timely counseled motion to modify his sentence on January 28, 2016, asserting that it was too harsh, and that a lesser sentence would not depreciate the seriousness of the offenses and would still adequately punish the Defendant. Before the Court decided the motion, however, the Defendant (by that time represented by private counsel) filed a Notice of

---

**Count 2 - Possession of a Controlled Substance (heroin), 35 P.S. § 780-113(a)(16):** merged with Count 1 for sentencing purposes;

**Count 3 - Possession of a Small Amount of Marijuana, 35 P.S. § 780-113(31)(i):** fifteen (15) to thirty (30) days incarceration, to run concurrently to the previously imposed sentence;

**Count 4 - Fleeing or Attempting to Elude an Officer, 75 Pa.C.S.A. § 3733(a):** eighteen (18) to thirty-six (36) months incarceration, to run consecutively to the previously imposed sentences;

**Count 6 - Recklessly Endangering Another Person, 18 Pa.C.S.A. § 2705:** twelve (12) to twenty-four (24) months incarceration, to run consecutively to the previously imposed sentence;

**Count 8 - DUI (1st Offense), 75 Pa.C.S.A. § 3802(d)(1):** seventy-two (72) hours to six (6) months incarceration; to run concurrently to the previously imposed sentences;

**Count 9 - Flight to Avoid Apprehension, 18 Pa.C.S.A. 5126(a):** eighteen (18) to thirty-six (36) months incarceration, to run consecutively to the previously imposed sentences;

**Count 10 - Defiant Trespass, 18 Pa.C.S.A. 3503(b)(1)(ii):** $25.00 fine plus costs;

**Count 11 - Resisting Arrest, 18 Pa.C.S.A. § 5104:** nine (9) to eighteen (18) months incarceration to run consecutively to the previously imposed sentences;

**Count 12 - Driving Without a License, 75 Pa.C.S.A. § 1501(a):** $25.00 fine plus costs;

**Count 13 - Driving While Operating Privileges are Suspended, 75 Pa.C.S.A. § 1543(a):** $200.00 fine plus costs;

**Counts 14, 23-29 - Duties at a Stop Sign, 75 Pa.C.S.A. § 3323(b):** $25.00 fine plus costs on each count;

**Count 15, 16 - Driving the Wrong Way, 75 Pa.C.S.A. § 3308(b):** $25.00 fine plus costs on each count;

**Count 17 - Limitations on overtaking on the left, 75 Pa.C.S.A. § 3305:** $25.00 fine plus costs;

**Count 18 - Turning Movements and Required Turning Signals, 75 Pa.C.S.A. § 3334(a):** $25.00 fine plus costs

**Count 19 - Driving at Safe Speed:** $25.00 fine plus costs

**Count 20 - Exceeding 35 mph in Urban District, 75 Pa.C.S.A. § 3362(A1-25):** $25.00 fine plus costs;

**Count 21 - Careless Driving, 75 Pa.C.S.A. § 3714(a):** $25.00 fine plus costs;

**Count 22 - Reckless Driving, 75 Pa.C.S.A. § 3736:** $200.00 fine plus costs.

4

Appeal of his January 22, 2016 sentence. On March 1, 2016, we denied the Defendant's motion to modify his sentence and again advised him of his appellate rights. Also on March 1, 2016, the Defendant was directed to file a Concise Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(b) and the Commonwealth was requested to respond thereto. The Defendant's Rule 1925(b) Statement was submitted on March 16, 2016, and the Commonwealth filed its response on April 29, 2016.

This matter is now ripe for an Opinion addressing the alleged errors raised by the Defendant. For the reasons set forth below, we believe the verdict and judgment of sentence should be affirmed.

## II. LAW AND DISCUSSION:

The Defendant's Concise Statement of Errors Complained of on Appeal asserts that this Court abused its discretion and committed errors of law as follows:

a. In finding that there was probable cause to initiate a lawful traffic stop of the vehicle that was being driven by the Defendant, which eventually led to his arrest;

b. In finding that the items of purported marijuana and heroin that were seized from the Defendant and taken into evidence were admissible at trial, given that they were fruits of inadmissible statements made by the Appellant to Officer Balchune [sic];

c. In finding that the statements made by the Defendant during the traffic stop were admissible during trial, given that they were the result of a custodial interrogation in which the Defendant was not read his Miranda rights;

d. That the Defendant was provided with effective assistance of counsel throughout the duration of the case;

e. In imposing a sentence upon the Defendant that was too excessive, given that a lesser sentence would not depreciate the seriousness of the offenses and it would still adequately punish the Defendant.

5

Pa.R.A.P. 1925(b) Statement of Errors Complained of on Appeal filed 3/16/16.

We first address the Defendant's assertion that this Court erred in finding that Officer Balchun had probable cause to stop the Defendant's vehicle. Section 6308(b) of the Motor Vehicle Code provides that:

> Whenever a police officer ... has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S.A. § 6308(b). "Although subsection 6308(b) delineates the general rule, it does not apply in all instances because ... not all vehicle offenses require further investigation to determine whether a motorist has committed that offense." *Commonwealth v. Ibrahim*, 127 A.3d 819, 823 (Pa. Super. 2015). When the driver's detention cannot serve an investigatory purpose relevant to the suspected violation, the detaining officer must "articulate specific facts possessed by him, at the time of the questioned stop, which would provide probable cause to believe that the vehicle or the driver was in violation of some provision of the Code." *Id.* (*citing Commonwealth v. Feczko*, 10 A.3d 1285, 1291 (Pa. Super. 2010) (en banc), *appeal denied*, 25 A.3d 397 (Pa. 2011).

With regard to probable cause, the courts of this Commonwealth have recognized that "[t]he police have probable cause where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed." *Commonwealth v. Brown*, 64 A.3d 1101, 1105 (Pa. Super. 2013) (*citing Commonwealth v. Hernandez*, 594 Pa.

6

319, 935 A.2d 1275, 1284 (2007) (quotation and citations omitted)). Probable cause is evaluated by considering all relevant facts under a totality of circumstances analysis. *Brown*, supra.

Here, the Defendant's vehicle was stopped for failing to use a turn signal, in violation of 75 Pa.C.S.A. § 3334, which provides in pertinent part as follows.

> **§ 3334. Turning movements and required signals**
> **(a) General rule.**—Upon a roadway no person shall turn a vehicle or move from one traffic lane to another or enter the traffic stream from a parked position unless and until the movement can be made with reasonable safety nor without giving an appropriate signal in the manner provided in this section.
> **(b) Signals on turning and starting.**—At speeds of less than 35 miles per hour, an appropriate signal of intention to turn right or left shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning. The signal shall be given during not less than the last 300 feet at speeds in excess of 35 miles per hour. The signal shall also be given prior to entry of the vehicle into the traffic stream from a parked position.

75 Pa.C.S.A. § 3334(a)-(b). This Court found that the testimony of Officer Balchun supported a finding that the officer had probable cause to believe that the Defendant's conduct violated 75 Pa.C.S.A. § 3334. Specifically, Officer Balchun testified that he personally observed the Defendant's vehicle make a right-hand turn from North Empire Court Street onto Coal Street without using a turn signal. N.T. 7/28/15 at 5. This Court finds Officer Balchun's testimony of his observations to be credible, and that Officer Balchun articulated specific facts possessed by him, at the time of the questioned stop, which provided probable cause to believe that the Defendant was committing an offense.

The Defendant next asserts that his statement to Officer Balchun should have been suppressed because it was given during a custodial interrogation and without

7

Miranda warnings, and further, that the marijuana surrendered by him and the heroin recovered after he threw it from the vehicle should have been suppressed because they were fruits of the inadmissible statement. An examination of the circumstances, however, as testified to by Officer Balchun and uncontradicted by the Defendant, supports the conclusion that both the statement and the evidence were properly ruled admissible. As explained, Officer Balchun had probable cause to lawfully stop the Defendant's vehicle for the motor vehicle code violation. When the officer performed the traffic stop and approached the Defendant's vehicle, however, he smelled a strong odor of marijuana coming from it. At this point, Officer Balchun was well within his authority to conduct an investigation detention and to search the vehicle.

To maintain constitutional validity, an investigative detention must be supported by a reasonable and articulable suspicion that the person seized is engaged in criminal activity and may continue only so long as is necessary to confirm or dispel such suspicion." *Commonwealth v. Strickler*, 563 Pa. 47, 58, 757 A.2d 884, 889 (2000). See also *Commonwealth v. Parker*, 619 A.2d 735, 738 (Pa. Super.1993). The determination of whether an officer had reasonable suspicion is an objective one which must be considered in light of the totality of the circumstances. *Commonwealth v. Kemp*, 961 A.2d 1247, 1258 (Pa. Super. 2008). A stop focusing upon one violation may, in appropriate circumstances, be extended for purposes of pursuit of a separate suspected violation. *Commonwealth v. Freeman*, 563 Pa. 82, 89-90, 757 A.2d 903, 907-08 (2000). The smell of marijuana emanating from a person's vehicle is a specific and articulable fact reasonably warranting a belief that criminal activity is afoot. *Commonwealth v. Trenge*, 451 A.2d 701, 708 (Pa. Super. 1982). Here, the evidence supports a finding

8

that during the lawful traffic stop for the motor vehicle violation, Officer Balchun had reasonable suspicion to believe that additional criminal activity was afoot, justifying an investigative detention to pursue that suspected activity.[6]

During the investigative detention prompted by the smell of marijuana coming from the Defendant's vehicle, Officer Balchun asked the Defendant if there was marijuana in it. The record does not suggest that in asking this question Officer Balchun threatened the Defendant in any way or used force against him in order to obtain a statement. Regarding the propriety of Officer Balchun's inquiry, we note that police may ask a detainee a moderate number of questions to try to obtain information confirming or dispelling the officer's suspicions of criminal activity. _Commonwealth v. Chase_, 599 Pa. 80, 960 A.2d 108, 115–16 (2008). The Defendant could have refused to answer questions, but that does not obviate the officer's right to ask them. Further, "[i]t is well-established that 'the dictates of Miranda do not attach during an investigatory detention.'" _Commonwealth v. Murray_, 936 A.2d 76, 81 (Pa. Super. 2007) (citing _Commonwealth v. Kondash_, 808 A.2d 943, 948 (Pa. Super. 2002) (finding that the defendant was the subject of an investigatory detention, not under arrest, when an officer asked him why he had a gun in his car, thus Miranda warning were not required). Because Officer Balchun asked the Defendant a single question, designed specifically to confirm or dispel the officer's suspicions that the Defendant was engaged in criminal

---

[6] Indeed, as we will discuss, the smell of marijuana coming from the vehicle provided probable cause to search the Defendant's vehicle regardless of further investigation or questioning. See _Commonwealth v. Gary_, 625 Pa. 183, 91 A.3d 102 (2014) (plurality) (noting that the smell of marijuana emanating from inside the vehicle provided undisputed probable cause to search); _Commonwealth v. Stoner_, 344 A.2d 633, 635 (Pa. Super. 1975) (holding that the smell of marijuana provides probable cause to search).

activity, we find that the question was properly posed pursuant to, and in furtherance of, a legal investigatory detention. As such, the Defendant's motion to suppress his statement was properly denied.

In response to the question asked by Officer Balchun, the Defendant indicated that he had marijuana in the vehicle, and then immediately handed a baggie of it to the officer. N.T. 7/28/15 at 7. Since Officer Balchun was conducting a lawful investigative detention at the time the Defendant handed him the marijuana, the Defendant's request to suppress it was properly denied. Further, regardless of the propriety of his question to the Defendant and the Defendant's response thereto, Officer Balchun already had probable cause to search the vehicle, based on the smell of marijuana coming from it, and that search would have revealed the marijuana and heroin.

"In this Commonwealth, the law governing warrantless searches of motor vehicles is coextensive with federal law under the Fourth Amendment. The prerequisite for a warrantless search of a motor vehicle is probable cause to search; no exigency beyond the inherent mobility of a motor vehicle is required." _Commonwealth v. Gary_, 625 Pa. 183, 242, 91 A.3d 102, 138 (2014) (plurality). Thus, the smell of marijuana coming from the Defendant's vehicle, alone, would have provided grounds to search it. See _Gary_, supra;[7] _Commonwealth v. Caban_, 60 A.3d 120, 132 (Pa. Super. 2012)

---

[7] The factual circumstances of _Gary_ are very similar to the instant case. Therein, police stopped a car for a suspected Motor Vehicle Code violation, then noticed the smell of marijuana coming from it when they approached. _Commonwealth v. Gary_, 29 A.3d 804, 806 (Pa. Super. 2011). An officer asked the defendant if "there was anything in the vehicle that the officers 'need[ed]'to be worried about'" and the defendant replied that "there was some 'weed' in the car." _Id._ The defendant was removed from the car and placed in a police cruiser, and a canine sniff of his car began. _Id._ During the canine sniff, the defendant got out of the police cruiser and fled. _Id._ He was apprehended and returned to the cruiser. _Id._ Marijuana was discovered in the car. _Id._

10

(probable cause existed where troopers clearly smelled the odor of raw marijuana emanating from the trunk of the vehicle); *Commonwealth v. Copeland*, 955 A.2d 396, 401, 402-403 (Pa. Super. 2008) (the odor of marijuana provided probable cause to believe that marijuana was inside the vehicle and to support a search of that vehicle) (citing *Commonwealth v. Stoner*, 344 A.2d 633, 635 (Pa. Super.1975) (analogizing a "plain smell" concept with that of plain view, and holding that where an officer is justified in being where he is, his detection of the odor of marijuana is sufficient to establish probable cause to search)).

As the record reflects, Officer Balchun did not have the opportunity to search the vehicle because the Defendant handed him the marijuana, then drove away. While fleeing, the Defendant threw the heroin out the window of the vehicle. The Defendant's request to suppress the heroin was properly denied, as that evidence would have been discovered during the lawful search of the vehicle had the Defendant not fled, and can

---

The trial court refused to suppress the marijuana, but the Superior Court reversed, finding that the defendant was in police custody prior to the search and there was no imperative need for prompt police action, thus, exigent circumstances were not present to justify the warrantless search and the evidence obtained from that search should have been suppressed. *Id.*, 29 A.3d at 808.

Granting the Commonwealth's Petition for Allowance of Appeal, the Pennsylvania Supreme Court agreed to address the following two issues:

    a. Were the police permitted to conduct a warrantless search of defendant's SUV for marijuana where, during a traffic stop, they could smell marijuana emanating from the vehicle, defendant informed police that he had marijuana in the SUV, and the officers had not had the opportunity to obtain a warrant prior to stopping the vehicle?

    b. Should this Court adopt the federal automobile exception to the warrant requirement?

*Commonwealth v. Gary*, 615 Pa. 610, 44 A.3d 1146 (2012). The Supreme Court subsequently vacated the order of the Superior Court and reinstated the defendant's judgment of sentence, finding that "there is no dispute that probable cause existed to search Appellee's motor vehicle. Nothing more is required." *Gary*, 625 Pa. at 242, 91 A.3d at 138.

11

additionally be viewed as being abandoned by the Defendant. The Pennsylvania Supreme Court set forth the following test for ascertaining whether a defendant abandoned property:

> The theory of abandonment is predicated upon the clear intent of an individual to relinquish control of the property he possesses.
>> Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts. All relevant circumstances existing at the time of the alleged abandonment should be considered. **Police pursuit or the existence of a police investigation does not of itself render abandonment involuntary.** The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search.
>
> Moreover, it is well settled that no one has standing to complain of a search or seizure of property that he has voluntarily abandoned. This Commonwealth has adopted the theory of abandonment of property only when it is shown that the seized evidence was not discarded as a result of **unlawful** police coercion.
>
> Although abandoned property may normally be obtained and used for evidentiary purposes by the police, such property may not be utilized where the abandonment is coerced by **unlawful** police action.

*Commonwealth v. Shoatz*, 366 A.2d 1216, 1219-1220 (Pa. 1976) (emphasis added, citations omitted). Here, because the police lawfully conducted a traffic stop for the Motor Vehicle Code violation (which escalated into an investigative detention based on the odor of marijuana, during which the Defendant admitted having marijuana and handed it to police) they had probable cause to search the vehicle and the Defendant's subsequent flight and abandonment of the heroin was not coerced by unlawful police action.

12

For the foregoing reasons, the marijuana and heroin were lawfully obtained and used for evidentiary purposes by the police, and the Defendant's request to suppress that evidence was properly denied.

The Defendant additionally alleges that he was provided with ineffective assistance of counsel throughout the duration of the case. Pursuant to *Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002), defendants should not raise claims of ineffective assistance of counsel on direct appeal, but should defer them for collateral review. In accordance with this rule, the Defendant's claims regarding ineffective assistance of counsel should be dismissed without prejudice. See also *Commonwealth v. Holmes*, 621 Pa. 595, 631, 79 A.3d 562, 583 (2013) (claims of ineffective assistance of trial counsel in Pennsylvania generally are deferred to PCRA review and generally are not available on direct appeal).

Finally, the Defendant challenges the sentences impose following his convictions.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. To constitute an abuse of discretion, the sentence imposed must either exceed the statutory limits or be manifestly excessive. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Perry*, 883 A.2d 599, 602-03 (Pa. Super. 2005) (citing *Commonwealth v. Mouzon*, 828 A.2d 1126, 1128 (Pa. Super. 2003). (internal citations and quotation marks omitted).

> "When imposing a sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant."

13

*Commonwealth v. Griffin*, 804 A.2d 1, 10 (Pa. Super. 2002), appeal denied, 582 Pa. 671, 868 A.2d 1198 (2005), cert. denied, 545 U.S. 1148, 125 S.Ct. 2984, 162 L.Ed.2d 902 (2005). "In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation." *Id*. Where the sentencing court had the benefit of a presentence investigation report ("PSI"), we can assume the sentencing court "was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Devers*, 519 Pa. 88, 101-02, 546 A.2d 12, 18 (1988). See also *Commonwealth v. Tirado*, 870 A.2d 362, 368 (Pa. Super. 2005) (stating if sentencing court has benefit of PSI, law expects court was aware of relevant information regarding defendant's character and weighed those considerations along with any mitigating factors). Further, where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code. See *Commonwealth v. Cruz-Centeno*, 447 Pa. Super. 98, 668 A.2d 536 (1995), appeal denied, 544 Pa. 653, 676 A.2d 1195 (1996) (stating combination of PSI and standard range sentence, absent more, cannot be considered excessive or unreasonable).

*Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010).

Here, the Defendant specifically asserts that his standard ranges sentences were excessive because "a lesser sentence would not depreciate the seriousness of the offenses and it would still adequately punish the Defendant." Rule 1925(b) Statement at ¶ e. As noted above, the Defendant's sentences were imposed with the benefit of a pre-sentence investigation, and this Court specifically recognized the Defendant's lengthy criminal history, which included manslaughter while the Defendant was a juvenile, weapons offenses, and drug trafficking offenses. N.T. 1/22/16 at 7. We further recognized the Defendant's failure to take advantage of the opportunities provided him to reform his ways, as well as the serious nature of his current offenses, and the danger the Defendant posed to the public while committing the offenses. *Id*. at 7, 12. Thus the sentences imposed were not excessive, and were imposed so as to not diminish the serious nature of the offenses. *Id*. at 7.

14

For the foregoing reasons, the Defendant's appeal should be denied in its entirety, and the verdict and judgment of sentence affirmed.

**END OF OPINION**