Rockingham,
June 3, 1941. } No. 3240.

### DOROTHY BOSTON *v.* BOSTON & MAINE SUPER SERVICE INC.

### BEVERLEY C. FRYE *v.* SAME *& a.*

### EDWIN A. COOKSON *v.* SAME.

*William H. Sleeper*, for the plaintiffs.

*Waldron & Boynton* (*Mr. Waldron* orally), for the defendant.

ALLEN, C. J.   The evidence how the accident happened is in many respects in conflict and confusing.   Montville's negligence, however, is conceded.   The Ford car which was ahead of him and which he ran into was in the process of making a left hand turn to cross the highway and enter a private driveway.   There was evidence that in the process it stopped to permit a truck coming from the opposite direction to pass by before it crossed the lane in which the truck was proceeding.   In any event it was moving slowly when struck.

Montville's passenger did not observe the Ford car until they were close upon it when it was too late to avoid the crash into it. The claim that she is chargeable with contributory fault as matter of law rests in part upon a claim of a required finding that Montville was so much under the influence of liquor at the time that she should have been aware of it and either refused to ride with him or been more vigilant and warned him seasonably of the danger.

It was in evidence that she desired to buy a car when she could afford it.   Montville as a car salesman and knowing her as a possible customer called her attention to one and an appointment was made for her to see it at his employer's garage in Portsmouth.   She arrived there at about nine o'clock in the evening of the day of the accident.   Some social enjoyment was indulged in, during which liquor was served.   So far as the evidence shows, she had one drink and Montville not over two.   Afterwards, at about ten o'clock, he left to meet his wife and take her to their home in Rye, using one of the defendant's cars.   He returned in about three-quarters of an

hour, and at about eleven o'clock left the garage with Miss Frye to drive her beyond Kittery to York where she was teaching school. The car he took was the one in which he sought to interest Miss Frye. The accident took place while on their way to York.

No direct evidence that prior to the accident Montville was observably under the influence of liquor has been pointed out, but it is understood to be the defendant's position that the circumstances of the accident demand the inference. This position appears to be one of arguing in a circle, asserting that unfitness to drive caused the accident which in turn proved the unfitness. In other words, the accident proved its cause and itself showed how it happened. The real cause was negligent attention to travel ahead, and the evidence does not compel a finding that liquor produced the inattention. ". . . it is necessary, in order to establish contributory negligence in a case such as this, not only that the driver of the car should, to the knowledge of the passenger, have been under the influence of liquor, but that this condition should have been a contributing cause of the accident." *Bubar* v. *Fisher*, 134 Me. 11.

Miss Frye testified that Montville "acted all right" and "appeared to be responsible" when they left the defendant's garage and that until the accident he drove properly. She knew that while "he had had a drink," he had afterwards "driven somewhere and come back and it had been quite some time" before he took her to return to York. The evidence is not conclusive to show that she was careless as a passenger in accepting and traveling with him as a suitable driver. Nor does it require a finding that she was called upon to exercise unusual and special vigilance. It was at most an issue of fact whether the one drink which she knew he had taken created a situation which should have been regarded by her as a risk to her safety. She was therefore not required to be exceptionally alert, and for a passenger always to be on the watch for possible dangers when the driver is a person who may be reasonably accepted as suitable is not understood to be a requirement of Maine law. It is said in *Salvas* v. *Cantin*, 85 N. H. 489, 493, that by the law of Maine "a passenger must conduct himself with reasonable care in the presence of dangers about which he knows or should know." No authorities have been found which invite any modification of that conclusion. By the case of *Kamillowitz* v. *Company*, 119 Me. 597, no duty beyond ordinary care is imposed, and the case holds only that in the special circumstances there passed upon the passenger's care could not be regarded as reasonable. Whether Miss Frye should have been more

watchful than she was, is a factual issue not to be determined as matter of law.

Moreover, it seems problematical whether Montville would have heeded a warning and acted upon it seasonably, if it had been given when the emergency first arose in Montville's failure to observe the Ford car when he should have. Common knowledge and experience prevent any acceptance of his account of the accident. He testified that while driving he first saw the Ford car when it was about 25 feet ahead of him and while his speed was from 35 to 40 miles an hour. The Ford car was turning to the left when he first saw it. He increased his speed, assigning the strange reason that by so doing he had a better chance to swing to the right and avoid the collision, and asserting that he failed in the effort because the Ford car "stopped dead" while turning into the middle lane. The testimony assumes the impossible in view of the admitted fact that the Ford car was struck almost squarely across its rear end and of the time limit of about half a second for so much action. In the absence of reliable evidence of his conduct after incurring the emergency the effect of a warning is doubtful.

The occupants of the Ford car are charged with negligence in not taking proper precautions to ascertain if any cars were coming towards them from behind. The driver of the car deposed that while on the right hand lane and traveling at a speed of 25 to 30 miles an hour, he gradually slowed down, then turned to enter the middle lane, putting out his left hand as he did so, and stopped in the middle lane to wait until a truck coming from the opposite direction on the northerly lane passed by. If the occupants were negligent in not being more on the lookout for oncoming cars from behind them, it is by no means conclusive that fault in such respect contributed to the accident. They did not enter the path of such an oncoming car, as was the situation in *Fernald* v. *French*, 121 Me. 4, and *Verrill* v. *Harrington*, 131 Me. 390, and no suggestion has been made what the driver should have done to escape being struck. If he was fully, or even only partly, in the center lane, Montville, had he been attentive, would have had the last chance to pass in safety on his right. Duly attentive, he would have seasonably seen the Ford car, its slowing speed, and its turn into the middle lane. He would have then had ample time in which to pass it on its right. So far as the right hand lane was not clear, there was safe traveling space at the right of it. If both occupants of the Ford car paid insufficient heed to travel behind them, their conduct in the control and operation of the car

might well have been what it was without assigning a negligent character to it, and the inattention might be found not to be proximately causal of their injuries. Moreover, they had the right to cross the road without doing so at their peril, and in view of the long straight distance behind them they might reasonably assume that due notice of their car would be taken. But if they were at fault, the issue of its consequences, had Montville been driving properly, does not require decision. Findably, it was the presence of their car rather than their operation of it which constituted a factor in the accident, and it has not been demonstrated that the place and position the car was in was more than a circumstantial factor of the accident.

The claim that Montville was driving the defendant's car only on "a venture of pleasure" at the time of the accident is met by the evidence that in taking Miss Frye to York some element of business for the defendant was involved. The fact that it was in part, or even mostly, for purposes of social entertainment would not overcome the fact of some agency. Miss Frye's testimony that on Montville's invitation she went to the defendant's garage to have a car shown her which she might be interested to buy and that the return to York was meant to be in a demonstration of the car, made reasonable a finding that Montville was then acting in the course and pursuance of his position as the defendant's salesman.

*Judgments on the verdicts.*

BURQUE, J., did not sit: the others concurred.