J-A24016-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES S. FOY, JR. | : | |
| | : | |
| Appellant | : | No. 376 WDA 2019 |

Appeal from the Judgment of Sentence Entered February 4, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0002939-2017

BEFORE: BENDER, P.J.E., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY McLAUGHLIN, J.:        FILED JANUARY 15, 2021

James S. Foy, Jr. appeals from the judgment of sentence entered following his convictions for Possession of a Small Amount of Marijuana ("SAM"), Knowing and Intentional Possession of a Controlled Substance ("K&I"), and Possession of Drug Paraphernalia ("Possession").[1] He maintains that the trial court erred in denying his suppression motion. Although we conclude the initial stop was proper, the trial court should have granted suppression of Foy's backpack. We therefore vacate the judgment of sentence, reverse the suppression order, and remand with instructions.

After the Commonwealth charged Foy, Foy filed a motion to suppress. The trial court held a suppression hearing at which the Commonwealth presented testimony supporting the following.

_____

[1] 35 P.S. §§ 780-113(a)(31), (16), and (32), respectively.

Officer Robert Pierce was on patrol duty with his partner on February 2, 2019, and at some point entered the Westin Hotel to use the restroom. While there, he encountered a person, later identified as Foy, who smelled of marijuana. N.T., Suppression Hearing, 10/25/18, at 3-4. Officer Pierce texted a description of Foy's clothing to his partner and told him to pay attention to where Foy went. After Officer Pierce finished using the restroom, he returned to his patrol car and he and his partner looked for Foy. Id. at 4.

Eventually, they located Foy and Officer Pierce approached him, asking him about the smell of marijuana, and Foy became hostile and aggressive. Id. at 5. Foy was wearing the same clothing as the individual Officer Pierce had seen in the hotel, and Foy's eyes were glassy and red and he smelled of both fresh and burnt marijuana. Id. at 5, 12. Officer Pierce detained Foy in handcuffs, while Foy resisted. Id. at 5-6, 11.

Officer Pierce asked Foy for his name and date of birth, but Foy refused to provide the requested information. Officer Pierce then "attempted to locate [Foy's] ID via wallet" by conducting a pat down, but did not find one. Id. at 6, 11. Officer Pierce smelled a "very strong" odor of marijuana coming from a backpack on Foy's back. Id. at 6. Officer Pierce opened the backpack and found a glass jar that contained marijuana. Id. at 7. He then searched the bag further and found both crack and powder cocaine. Id. Officer Pierce then asked Foy if he had anything else and Foy told him that he had a marijuana blunt in his pocket. Id. at 14. Officer Pierce testified that "we could have released him on summons," but because Foy did not provide his name or any

other identifying information, the officers took him to Allegheny County Jail. Id. at 13. Officer Pierce did not specify an offense for which they could have released Foy on summons.

At the close of testimony, Foy argued that the encounter between himself and officers was an investigative detention. He maintained that the smell of marijuana did not support the investigative detention, and even if the detention was proper, the search of the backpack was illegal. Foy argued:

> The officer did not testify to anything that would support a pat down or a search of Mr. Foy. He was not dispatched, there were no calls for suspicious behavior, no calls for illegal activity, no chaos on the street that would require the police to stop and investigate. He followed Mr. Foy because he smelled marijuana on him.
>
> Nothing in the evidence presented about that points to Mr. Foy as being armed and dangerous that would necessitate a search of his backpack or a search of his person, and there is no exception to the warrant requirement for a search of the bag.

Id. at 16.

The Commonwealth agreed that Foy was subject to an investigative detention but contended that the smell of marijuana, Foy's hostile manner, and "the obvious fact that he was intoxicated" gave the officer reasonable suspicion to stop him. Id. at 17. Regarding the search of the backpack, it contended that the officers had probable cause to search it because of the smell of fresh and burnt marijuana. See id. at 17-18. In the alternative, the Commonwealth flatly argued, without explanation, that police would have inevitably discovered the items in the backpack. Id. at 18.

The trial court denied Foy's motion to suppress. It credited Officer Pierce's testimony and concluded that Officer Pierce had "reasonable suspicion and/or probable cause" to stop Foy, and that the search of the backpack was a proper search incident to arrest. Order of Court, dated 10/31/18. The case proceeded to trial, and Officer Pierce gave testimony similar to that which he gave at the suppression hearing, adding that he found a digital scale and a marijuana grinder in Foy's backpack. N.T., Non-Jury Trial, 1/7/19, at 17. He also said that he recovered $1,700 from Foy and that Foy told him that it was his tax return money. Id. at 17, 23.

The trial court found Foy guilty of SAM, K&I, and Possession. It sentenced Foy to six to 12 months' incarceration with credit for time served for K&I and SAM. It also imposed one year of reporting probation for Possession. This timely appeal followed.

Foy raises the following issues before this Court:

I.    Whether the trial court erred in denying Mr. Foy's motion to suppress where the police officers seized Mr. Foy without reasonable suspicion to believe that criminal activity was afoot?

II.   Whether the trial court erred in denying Mr. Foy's motion to suppress where the police officers searched Mr. Foy's backpack without a warrant, and no exception to the warrant requirement applied under the facts and circumstances at hand?

Foy's Br. at 5 (suggested answers omitted).

Both of Foy's claims challenge the trial court's denial of his motion to suppress. Our standard of review for such a challenge "is limited to

- 4 -

determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." Commonwealth v. Wright, 224 A.3d 1104, 1108 (Pa.Super. 2019) (quoting Commonwealth v. Hoppert, 39 A.3d 358, 361 (Pa.Super. 2012)), appeal denied, 237 A.3d 393 (Pa. July 21, 2020). If the Commonwealth prevailed at the suppression hearing, on appeal "we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." Id. (quoting Hoppert, 39 A.3d at 361). We are limited to reviewing the evidence from the suppression hearing when reviewing a trial court's decision on the motion. Id. We review the suppression court's legal conclusions de novo. Commonwealth v. Brown, 996 A.2d 473, 476 (Pa. 2010).

In his first issue, Foy claims that the trial court "incorrectly held that the police officers possessed reasonable suspicion to justify [Foy's] seizure." Foy's Br. at 16. Foy agrees that the officers subjected him to an investigative detention based on the smell of marijuana. Id. at 16, 20. However, Foy argues that notwithstanding the smell of marijuana, Officer Pierce lacked reasonable suspicion. Id. at 25. Foy maintains that because of the passage of the Medical Marijuana Act ("MMA"), which legalized the possession of marijuana in Pennsylvania in limited circumstances, the smell of marijuana alone is not sufficient to "demonstrat[e] whether the odor comes a legal or illegal form of marijuana." See id. at 26, 33 (citing 35 P.S. §§ 10231.101-10231.2110). He also challenges the trial court's reliance on Commonwealth v. Stoner, 344

A.2d 633 (Pa.Super. 1975), because, according to Foy, the MMA negates any inference of criminal activity based on the smell of marijuana. See id. at 26.

An investigative detention "subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest." Commonwealth v. Parker, 161 A.3d 357, 362 (Pa.Super. 2017) (quoting Commonwealth v. Gutierrez, 36 A.3d 1104, 1107 (Pa.Super. 2012)). An investigative detention requires reasonable suspicion. Commonwealth v. Lyles, 97 A.3d 298, 302 (Pa. 2014). Reasonable suspicion "requires a suspicion of criminal conduct that is reasonable based upon the facts of the matter." Commonwealth v. Rogers, 849 A.2d 1185, 1190 (Pa. 2004) (emphasis in original). Thus, "the officer whose impressions formed the basis for the stop must articulate specific facts which, in conjunction with reasonable inferences derived from those facts, led him reasonably to conclude, in light of his experience, that criminal activity was afoot." Commonwealth v. Maxon, 798 A.2d 761, 768 (Pa.Super. 2002). However, reasonable suspicion does not exist based on "an officer's hunch or unparticularized suspicion." Id.

Here, the parties and the trial court agree that the stop was an investigative detention. Thus, the issue is whether the officers had reasonable suspicion. The trial court concluded that reasonable suspicion existed to stop Foy because Officer Pierce detected the odor of marijuana on Foy and Foy's eyes were red and glassy. See Trial Ct. Op., filed 10/23/19 at 5. In support, it cited Stoner, 344 A.2d at 635. There, an officer observed marijuana seeds

and leaves in plain view on the floor of a vehicle and detected a strong odor of fresh marijuana. Based his experience, he believed the odor was too strong to be coming from the small amount of marijuana visible in the vehicle's interior. This Court held that the combined circumstances, including the "plain smell" of the marijuana, were sufficient to give the officer probable cause to search the vehicle's trunk for additional marijuana. Id. at 636.

In this case, we conclude that Officer Pierce had reasonable suspicion to stop Foy. The odor of fresh and burnt marijuana, along with Foy's red and glassy eyes, gave Officer Pierce reasonable grounds to suspect that Foy was illegally in possession of marijuana. The investigative detention of Foy was thus proper. See id. at 636. While Foy argues that the enactment of the MMA rendered the suppression court's reliance on Stoner erroneous, we disagree.

The MMA "create[d] a temporary program for qualified persons to access medical marijuana, for the safe and effective delivery of medical marijuana, and for research into the effectiveness and utility of medical marijuana." Commonwealth v. Jezzi, 208 A.3d 1105, 1111 (Pa.Super. 2019) (citing 35 P.S. §§ 10231.102(1)-(4), 10231.301). Thus, while "[t]he MMA provides a very limited and controlled vehicle for the legal use of medical marijuana by persons qualified under the MMA[,]" marijuana remains to be an illegal substance for possession under the Controlled Substance, Drug, Device, and Cosmetic Act ("CSA"). Id. at 1115; see also 35 P.S. § 780-104(1)(iv) (defining marijuana as a Schedule I controlled substance). Since the possession of marijuana is still illegal in Pennsylvania unless the MMA applies,

Officer Pierce's suspicion of criminal activity being afoot was reasonable. He did not need to have absolute proof that the possession of marijuana was illegal. Indeed, no evidence at the suppression hearing suggested that Foy's possession of marijuana was lawful under the MMA and that the police officers ought to have known. The trial court did not err in relying on Stoner and the "plain smell" principle when concluding that reasonable suspicion existed.

Next, Foy argues that even if officers had reasonable suspicion, "the trial court nevertheless erred in upholding their subsequent search of Mr. Foy's backpack." Foy's Br. at 35. He maintains that no exception to the warrant requirement was applicable to the instant case. Id. He also argues that the trial court's reliance on Commonwealth v. Copeland, 955 A.2d 396 (Pa.Super. 2008), was misplaced. The Commonwealth responds that the trial court properly denied suppression of the items found in Foy's backpack because the doctrine of inevitable discovery rendered them admissible. The Commonwealth maintains that officers had probable cause to arrest Foy for public drunkenness, and therefore would have inevitably discovered the contents of the backpack during a search incident to arrest.

Police officers must obtain a search warrant supported by probable cause before they conduct a search, unless an exception to the warrant requirement applies. See Commonwealth v. Gary, 91 A.3d 102, 107 (Pa. 2014). Items seized without a warrant, and in the absence of an exception to the warrant requirement, may nonetheless be admissible if the doctrine of inevitable discovery applies. This doctrine allows into evidence materials the

police obtained improperly if they would have inevitably discovered them by lawful means. See Commonwealth v. Fulton, 179 A.3d 475, 489-90 (Pa. 2018). If police misconduct enabled the police to obtain evidence improperly, the doctrine permits the admission of the evidence only if the officers who would have inevitably discovered the evidence were "truly independent" of the officers who committed the misconduct. Commonwealth v. Perel, 107 A.3d 185, 195 (Pa.Super. 2014) (citation omitted).

The trial court stated that it denied suppression because police had probable cause to search the bag due to the smell of marijuana. It added that even if officers lacked probable cause, the evidence was nonetheless admissible under the doctrine of inevitable discovery.

> In this case, the totality of the evidence establishes that there was probable cause to search the backpack and its contents and the controlled substances in the backpack would have inevitably been discovered. In addition, Officer Pierce also testified that he could not issue a citation to [Foy] because [Foy] would not identify himself, so he was arrested and transported to jail. A warrantless arrest is lawful if the facts and circumstances within the arresting officer's knowledge are such as would warrant a person of reasonable caution to believe an offense has been or is being committed and the person to be arrested is probably the perpetrator. Here there was clearly probable cause for [Foy's] arrest. In addition, a warrantless search is proper if incident to a lawful arrest. Commonwealth v. Plusquellic, 449 A.2d 47 ([Pa.Super.] 1982).

Trial Ct. Op., filed 10/23/19, at 6. The trial court also relied upon this Court's holding in Copeland, stating "the Superior Court analogized the 'plain smell' concept with that of the plain view doctrine and held that where an officer is

justified in being where he is, his detection of the odor of marijuana is sufficient to render a search constitutionally permissible. Copeland, [955 A.2d] at 401." Id.

We cannot agree with the trial court that probable cause, standing alone, is sufficient to defeat a motion to suppress or to satisfy the doctrine of inevitable discovery. Rather, probable cause is a predicate to obtaining a warrant, which police must do unless a warrant exception applies. Even assuming police had probable cause here, the doctrine of inevitable discovery does not render the evidence admissible. Inevitable discovery does not apply if the officers who would have allegedly inevitably discovered the evidence were the same officers who obtained it through improper actions, such as occurred here when police searched the backpack without a warrant and in the absence of a warrant exception. See Perel, 107 A.3d at 195. Applying the doctrine where officers had probable cause but failed to get a warrant, and no exception applied, would allow the inevitable discovery doctrine to swallow the warrant requirement.

Our decision in Copeland does not change the outcome. There, we merely applied the "plain smell" rule to determine that police had probable cause and therefore were entitled to search the defendant's vehicle under the automobile exception to the warrant requirement. Copeland, 955 A.2d at 400. That ruling has no relevance here, as there is no claim that any warrant exception applied, including the automobile exception. We therefore reverse

the order denying suppression, vacate the judgment of sentence, and remand for a new trial.

Judgment of sentence vacated. Order denying suppression reversed. Case remanded for a new trial. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/15/2021